## THE HOME INSURANCE CO. v. E. A. WHEATLEY.

Eastern Section.     March 13, 1926.

Petition for Certiorari denied by Supreme Court, April 10, 1926.

1. **Insurance. Failure to give notice immediately after loss as required by policy held not to work a forfeiture. Notice not a condition precedent.**
   If a policy of insurance provides that notice and proof of loss are to be furnished within a certain time after loss has occured, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose a forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action, though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy. And this was held to be true even though the policy provided that no action can be maintained until after a full compliance with all the requirements thereof.

2. **Insurance. Written statement signed and sworn to by policy holder may be waived by company.**
   Where the policy of insurance provided that within ninety days after loss the insured should furnish a sworn statement of loss and the evidence showed that the insured wrote a letter which was received by the company and that the company did not ask for any further statement, held that the company was estopped to assert the failure to furnish a sworn statement and deny liability on that ground.

Appeal from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Affirmed.

Sizer, Chambliss & Chambliss, of Chattanooga, for appellant.

Finlay & Campbell, of Chattanooga, for appellee.

SNODGRASS, J.   This is an action to recover on an insurance policy for the loss of an overcoat, and the parties will be referred to hereinafter as they were styled in the court below.

The plaintiff, E. A. Wheatley, brought suit before a Justice of the Peace, recovered, and the insurance company appealed to the circuit court, where the cause was tried before the court without

the intervention of a jury, when the plaintiff again recovered in the sum of $45 as the value of the lost coat. Motion for a new trial was made and overruled, the insurance company appealed, and now complains that:

"The Circuit Judge erred,

"(1)  In rendering judgment in favor of the plaintiff and against the defendant on the facts shown in the record.

"(2)  In failing and refusing to set aside the judgment in favor of the plaintiff and grant a new trial, because there was no evidence to sustain the judgment in favor of the plaintiff.

"(3)  In failing and refusing to hold and adjudge that under the terms and provisions of the policy the furnishing by the assured of written notice of the loss forthwith, and the furnishing of the sworn statement require by paragraph 11 within ninety days after the loss, were conditions precedent to any right of action on the policy; and that the notice and statement required, not having been furnished as stipulated, the plaintiff could not recover."

The insistence embodied in the third specification determines this lawsuit. The plaintiff Wheatley had a policy which covered the overcoat in question, and which assured him against its loss in transportation. The loss occurred on the 26th day of March, 1923, while he was on his way in company with his niece from Florida to Tennessee. He had put the coat on the back seat of his automobile, and noticed it when he crossed the bridge into Daytona, through which they state they passed without stopping, and discovered its loss when they stopped about five miles this side to investigate some difficulty about tires, about nine or ten o'clock in the morning. He did not return on the road to see if it might be found, but came on to Chattanooga, to which latter place he was in a hurry to arrive. He said he did not have time to go back and look for it. He stated that it would not have been left lying on the road; that he would have had to inquire of people all along, and he was in a great hurry to get into St. Augustine that night and had a long way to go; that he felt by advertising he could get it back; he felt sure somebody would pick it up, and that he could not find them in driving along that road in ten minutes; that people were along that road all the time. He did not get back home to Chattanooga until about the last of March, and as soon as he got home he advertised; that is, he had telegraphed an advertisement for the coat to the Daytona Journal, which appeared in two insertions, on Sunday, March 30th, and Tuesday following. He heard nothing from the coat, and it was not until April 26, 1924 that he gave the local agents of the

defendant company notice of the loss, in the following letter, which comprised also his sum total as to filing any written evidence of the loss within ninety days from the date of the same, which was also a provision of paragraph 11 of the policy:

"April 26, 1924. Kemp & Gates, City. Dear Sirs: Re Home Insurance Policy No. 05593. This is to advise you that on Wednesday, March 26, 1924, while driving in my automobile from Daytona, Fla., to Jacksonville a new Scotch Mist overcoat which I had just recently purchased and which had only been worn two or three times, was lost, evidently having blown out of the car from where it was lying on the tonneau seat. On my return home I had my advertising agents, Nelson Chesman & Co., wire an ad in the Daytona Journal, offering a reward for the return of the coat, but have had no response. The price of the coat was $50. Kindly take it up with the insurance company and favor me with a check for this and oblige, yours truly."

"P. S. The loss was noticed about five miles out of Daytona."

The home office of the defendant company was in New York, while the office of the local agents to whom the said letter was written and delivered was in Chattanooga, Tennessee, the home of the plaintiff. The local agents of the insurance company took the matter up with the company. They accepted the notice and proof of loss without raising any question about it, and did not in any way indicate to the plaintiff any dissatisfaction with this proof of loss. On the 27th day of June, 1924, the plaintiff received the following reply from said local agents:

"The Home Insurance Company<br>"New York.

"Organized 1853.                                        Cash Capital $18,000,000.

"Eldridge G. Snow, President.

"Kemp & Gates, Agents,

"115 East Eighth Street,

"Chattanooga, Tennessee.                                June 27, 1924.

"Mr. E. A. Wheatley,

"C/o Chattanooga Medicine Co.,

"City.

"Dear Sir:

"We are in receipt of the following letter with reference to your recent loss of coat:

" 'I am in receipt of letter from the Assistant General Adjuster of this Company which contains the following:

" ' 'Acknowledging yours of the 17th instant, would advise that upon the facts as related we do not feel that we should be called upon to make any donation, as the loss would seem

to be unquestionably due to carelessness on the part of the assured, rather than the result of any of the perils insured against. Under the circumstances we assume you will decline liability keeping us, however, fully posted on all developments.'

"Acting under the above will ask that you notify Mr. Wheatley that we have no liability on account of the loss of his overcoat from his car.

"Yours truly,

"Kemp & Gates,

"Per J. M. Kemp."

The foregoing was the only reply the plaintiff received, and, it seems, was all he did to validate his insurance, if it needed such, or prevent its invalidation according to the terms of the policy. Afterwards he turned the matters over to his attorneys, who on June 30th communicated with the defendant, that if they wanted further proof to send blanks, to which on July 27th they received the following reply:

"We have your letter of June 30th and wish to advise loss in question is under jurisdiction of E. H. Shirley, of Nashville, to whom we have referred your letter."

The plaintiff never heard anything from Shirley, and on September 11th instituted this suit.

He had only had the coat two or three weeks, the cost of it was $50, and it was well worth the amount of the judgment he obtained, which was $45.

The insistence of the company is that there is no evidence to support the judgment, or from which the court was authorized to conclude a liability; that under one clause of the policy the liability was conditional upon giving a forthwith notice to the company or its agents of the loss, which was not done; and that another clause requiring written statement to be filed within ninety days from the date of loss was not observed, and that this had also the effect to invalidate the claim if any had existed under the policy. The provisions of the policy necessary to be examined to determine these questions are as follows:

"This Policy Insures:

"(3) Against any and all risks and perils (except as hereinafter provided), of fire, lightning, cyclone, tornado, flood (meaning rising waters), navigation and transportation; theft, pilferage and larceny, provided the same shall not occur due to the negligence or carelessness of the assured and further provided the assured shall promptly notify the local authorities on discovery of loss; but with respect to theft, pilferage and larceny this policy does not cover furs, musical and scientific instruments, jewelry, plate and plated ware, clocks,

watches and similar valuables for an amount exceeding:''
etc., etc.

"(11) In the event of loss or damage the assured shall forthwith give notice thereof in writing to the company or its agents. Within ninety (90) days after loss or damage the assured shall make written statement to the company, signed and sworn to by him stating the place, time and cause of loss or damage, the interest of the assured and all others in the property, cost price of each article lost or damaged, from whom purchased or obtained, their value at time of loss, the amount of loss or damage claimed, the total amount of insurance carried on the property covered by this policy, the total value of all property covered by this policy on the date the loss occurred and the value of the property in the specific location where the loss occurred. The assured shall, if required, exhibit damaged property, submit to an examination under oath, and produce bills or certified copies thereof if originals be lost covering the property lost or damaged. Failure to file complete proof of loss, as herein above prescribed, within ninety (90) days from the date of loss invalidates the claim.''

"(18) No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the foregoing requirements, nor unless commenced within twelve months next after the happening of the loss, provided that where such limitation of time is prohibited by the laws of the State wherein this policy is issued, then and in that event no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State.''

"(21) This policy is made and accepted subject to the foregoing stipulations and conditions, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive or be deemed to have waived any provision or condition of this policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached.''

As we construe the policy, while the provisions requiring the assured to make a written statement within ninety days after the loss would, upon default and without waiver, invalidate any claim under the policy, the failure to give the forthwith notice

of loss required in the first sentence of paragraph 11 does not work a forfeiture, nor is the giving of such notice a condition precedent to liability. There are many involved paragraphs and sentences in the policy, among which is the following:

"This Policy Insures:

"(3) Against any and all risks and perils (except as hereinafter provided), of fire, lightning, cyclone, tornado, flood, (meaning rising waters) navigation and transportation; theft, pilferage and larceny, provided the same shall not occur due to the negligence or carelessness of the assured and further provided the assured shall promptly notify the local authorities on discovery of loss; but with respect to theft, pilferage and larceny this policy does not cover furs, musical and scientific instruments, jewelry, plate and plated ware, clocks, watches and similar valuables for an amount exceeding," etc., etc.

We think the two provisos found in this paragraph was intended to be and was limited to loss due to theft, pilferage and larceny, and that the only penalty under the policy to which the forthwith notice is amenable is that of the 18th, which provides that "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, unless the assured shall have fully complied with all the foregoing requirements, or unless commenced within twelve months next after the happening of the loss. . . "

It appears, therefore, that this case falls directly within the principle announced in Insurance Co. v. Whitaker, 112 Tenn., (4 Cates), 155-167, and taken from Joyce on Insurance, as follows:

"If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose a forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action, though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy. And this was held to be true even though the policy provided that no action can be maintained until after a full compliance with all the requirements thereof."

Especially should this rule be followed when by the terms of the policy, as to such notice it is left to be determined by relative considerations how much time the term "forthwith" would involve.

However, the second provision, as to making a written statement, signed and sworn to by him, was not made within ninety days in accordance with the terms of the policy. This fact would

invalidate the claim of indemnity thereunder, unless by the conduct of the company under the circumstances its right to claim this strict and literal compliance has been waived, thereby estopping the defendant to set up this fact as a defense.

If the notice of loss thus given the local agents on April 26th filed in time, and we have held that it was, then there can be no doubt that it was intended also to serve as a proof of loss, though not sworn to, and that the company was apprised of this fact in time, which would have enabled the plaintiff to correct it, or supplement the letter by a more exact compliance with the provisions of the policy, and within the ninety days, had the plaintiff been advised that this proof of loss was not regarded as sufficient. We think he was lulled into the belief that the proof in the form of the letter was regarded as sufficient by the total neglect of the defendant to notify him that it was not until after the ninety days had expired, and then to disavow liability upon the ground that the loss was due to his own negligence and was not covered by the policy.

It is true that this claim was made after the ninety days had expired, and would not have estopped the defendant to have claimed nonliability upon any ground had the giving of the forthwith notice been a condition precedent to liability, for if, as a matter of fact, when the notice of loss was given there existed no liability under the policy which by reason of the delay had not been by the notice made to cover the loss, then the denial of liability for any reason could not have caused the plaintiff to lose a right that he did not possess, and which was not a superinducing cause of its extinguishment, or, more properly speaking, of its failure to attach. In that event the liability would never have matured, and it could not be said to have been created by any simple mistake or failure to assign the proper reason for its non existence. The authorities cited by appellant abundantly sustain this position, and with which we think our own State is in line; but if the time of the giving of the forthwith notice is not of the essence of liability, then, if given before the institution of the suit, it is only important to be looked to with reference to the question as to whether or not, under the circumstances, it sufficiently answered the requirements as to furnishing the written statement required under the ninety day clause, and, if not, whether defendant is estopped from insisting that any further or more exact compliance was required.

We think that the circumstances were such as obligated the defendant, if it required further proof of a more exact compliance with the policy as to this simply and solitary loss, which was comparatively small, to have asked for the same. The situation

demanded it, and had they done so with reasonable dispatch after receiving the notice of loss, there was time to have furnished such information or written statement sworn to as required. This was a provision made for the benefit of defendant, which it might have waived. We think this delay, prolonged until just after the time had expired, without any notice to the plaintiff that any verification or additional matter was required, is too significant to be a mere coincidence. We think the failure to ask for additiona¹ proof or to notify plaintiff that what he had furnished was not regarded as sufficient, had the effect to lull him into a sense of security, or to induce the belief that what he did furnish was regarded as sufficient, and that he was thus caused to allow his claim to become forfeit, when good faith under the circumstances would have required the defendant to have made known its objection, if any it had, to the form and character of the proof submitted, especially when it was indicated that the plaintiff was relying upon his statement thus signed as sufficient. "He who remains silent when conscience would compel him to speak, will not be permitted to speak when conscience would compel him to be silent."

This is a suit originating before a Justice of the Peace for $50, and should be decided upon equitable principles. The estoppel in this instance does not rest so much upon the fact that defendant assigned plaintiff's negligence as the only reason for non liability, but upon the ground that it made no objection to plaintiff's proof when he might have corrected or supplemented it until after it was too late to do so, thus effecting his injury.

In the case of Phoenix Insurance Co. v. Underwood, 12 Heiskell, 424, the court had under consideration a similar question, in which it said:

"It is insisted, however, that the policy was not payable, because of a failure to comply with certain conditions annexed to it. First, a condition, or rather stipulation, the precise effect of which, as it stands, we need not now determine, that in case of loss, the party shall forthwith give notice to the company or its agents. Whether this was strictly complied with we need not at present consider, as it was left to the jury whether such compliance had not been waived by the agent, King, who issued the policy, and the jury have found that it was waived. We think the proof shows that the agent to whom the notice was to be, or by the terms of the stipulation might be, given, was satisfied with the notice of loss, and that thereby the party was prevented from doing more than he did."

To the same effect is the case of Ligon's Adm'r v. Insurance Co., 87 Tenn. (3 Pickle) page 346, where it is said:

"In relation to this letter it is sufficient to say that, so far

as it concerns any supposed infirmities in the preliminary proofs of loss as made out and signed by plaintiff, it is inoperative by reason of the fact that such proofs are a substantial compliance with the requirements of the policy; and if defective, the company should have pointed out wherein they were insufficient.''

It is especially in the last sentence of the above paragraph that the court makes manifest what it understands the good faith obligation of the defendant to have been under the circumstances, and that, we think, is this case. As stated, the agent to whom the letter notice was given on April 26th made no objection to the form of proof, nor indicated that anything more would be required; but if it be insisted that this was not sufficient, the agent states he forwarded the letter to the home office, and that the letter he wrote to the plaintiff was mostly made up of copying a letter from the company. If the letter to the local agents, which was forwarded by them to the home office, had been forwarded without any unreasonable delay, it could have reached it some time about the 1st of May. The portion of the letter from the home office to the local agents, and which was evidently from the adjuster of the company, copied and transmitted to the plaintiff, indicated that the matter had been referred to the adjuster on the 17th, presumably in May, to which his reply was had to the company, and by the company forwarded to the local agents on the 27th of June, about one day after the time expired. This shows that the company thus had notice of the attitude and expectancy of the plaintiff, and should have seasonably communicated with him, under the circumstances, if they were not satisfied.

We think that the court was authorized to find from the evidence that the ninety day provision had been waived, and that the defendant was estopped to deny liability upon the ground that the claim had been invalidated.

It results that there is no reversible error in the case. The assignments are overruled, and the judgment of the lower court affirmed, with costs against appellant.

In denying writ, Supreme Court cited Insurance Co. v. Thornton, 97 Tenn., 1; Snyder v. Mystic Circle, 122 Tenn., 248.

Portrum and Thompson, JJ., concur.