15467

EVANS v. CENTURY INSURANCE COMPANY

(22 S. E. (2d), 877)

274

*Messrs. Royall & Wright,* of Florence, counsel for appellant,

*Mr. George W. Keels,* of Florence, counsel for respondent,

November 16, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE:

In an action on a fire insurance policy issued to the plaintiff on September 7, 1940, he recovered a judgment for $978.75.

The insurance covered real estate and personal property as follows, viz.: $600.00 on a one-story frame building in which the plaintiff operated a small mercantile business; $300.00 on his stock of merchandise, and $200.00 on store furniture and fixtures. The building and its contents were totally destroyed by fire on the night of December 30, 1940.

The defendant denied liability, on the ground that the plaintiff failed to comply with the iron safe clause of the policy. That clause bound the insured to take a complete itemized inventory of stock on hand at least once in each calendar year, and that unless such inventory had been taken within twelve calendar months prior to the date of the policy, he was bound to take such inventory in detail within thirty days of the issuance of the policy. The plaintiff was also required to keep a set of books which should contain a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, from the date of the inventory, which were to be kept locked in a fire proof safe at night, and at all times when the building was not open for business; or, failing in this, he was to keep

such books and inventories in a place not exposed to fire which would destroy the store building. The policy also stipulated that noncompliance with these conditions should render it void and bar any recovery thereon. It was contended in the trial below, upon motion for a nonsuit, that there was a breach of these warranties, and that the entire contract was thereby rendered void.

The iron safe clause is a promissory warranty, and provided for a complete record of the mercantile business transacted by the plaintiff, both purchases and sales of goods, as well for cash as on credit, and for the preservation of the same in order that the amount of loss, if any, might be definitely and satisfactorily ascertained. As shown by the evidence, the plaintiff did not have a fireproof safe in his store, nor did he at any time, so far as the record shows, take such inventory of his stock of merchandise as is contemplated in the policy, nor did he keep any books as required.

Plaintiff operated a farm, and in July, 1940, erected the store house in question, which was in size about 24 feet wide and 36 feet long, and he placed therein a stock of goods and merchandise valued, according to his estimate, at $500.00 or $600.00. It is admitted that such records of the mercantile business as the plaintiff possessed, consisting of bills and invoices, were destroyed in the fire which consumed the building.

The appellant now concedes in its brief that the soliciting agent, who issued the policy to the plaintiff, knew that he had no safe in the store, and that notice of this fact was imputed to the defendant.

Knowledge by the agent at the inception of the insurance contract, that the books would not be kept in a fireproof safe on the premises, would estop the insurance company from claiming a forfeiture on that ground. *Pearlstine v. Phoenix Ins. Co.,* 74 S. C., 246, 54 S. E., 372; *Doyle v. Hill,* 75 S. C., 261, 55 S. E., 446;

*Fludd v. Equitable Life Assur. Soc. of United States,* 75 S. C., 315, 55 S. E., 762. But the contract itself provides the precautions to be taken in the event the insured for any cause fails to keep the books in a fireproof safe at night, or when the premises mentioned in the policy are not actually open for business. In that case, the agreement is to keep them in some place not exposed to a fire which would destroy the store house. On this alternative provision of the policy the plaintiff relies upon waiver. The defendant offered no evidence, and moved generally for a nonsuit upon the whole case, on the ground that there was no evidence of waiver on the part of the appellant of the iron safe clause.

The plaintiff contends that the following evidence was sufficient to warrant the submission of the case to the jury on the question of waiver, and the trial Judge agreed with him. He testified that on September 7, 1940, about two months after he had commenced operating the mercantile business, Mr. J. L. Richardson, an agent of the appellant, came to his store and solicited fire insurance on his store building, stock of merchandise, furniture and fixtures. That when Richardson entered the store building, he walked about the store, saw everything in the place, and examined the stock of goods; that when the agent came into the store, plaintiff had his bills on a counter, checking up on his stock. Richardson asked the plaintiff if he kept any money in the place, and was told that he did not, that he took money to his house at night. While Richardson was in the store, respondent put the invoices which he had been checking, into a little square pasteboard box on the counter, and Mr. Richardson saw him do this.

It appears that the plaintiff customarily kept this pasteboard box on a top shelf in the store; that the bills or invoices therein contained constituted the sole record of his mercantile business, and that they were never removed from the store. There is no evidence that the insurance agent knew

that the pasteboard box and its contents were kept on the top shelf in the store, and were not taken to some place not exposed to a fire which would destroy the insured property when not open for business. Nor is there evidence that Richardson or any other agent of appellant was ever again in the store.

We do not think that any evidence was adduced to show waiver or estoppel before the fire as to the alternative provision in the policy, that is, that the insured's books and inventories after business hours would be kept in some place not exposed to a fire which would destroy the insured property. While it is admitted that Richardson, the agent, knew at the time the policy was issued that the insured had no fireproof safe in the building, this would not constitute a waiver or indicate any intention on the part of the insurer to waive other conditions or warranties in the policy. 29 Am. Jur., Sec. 870, page 667. Therefore, assuming that the agent knew at the time the policy was issued that the insured had no safe in the building, this would not of itself waive the alternative provision relating to the safekeeping of the books and inventories, nor the obligation resting upon the insured to keep and maintain such records.

The mere fact that the insurance agent when he entered the store, saw the plaintiff checking over some bills or invoices and later placing them in a pasteboard box on a counter, in our opinion is not sufficient from which a reasonable inference of waiver may be drawn. This circumstance standing alone could constitute no reasonable notice that the insured would continue to keep them there or at some other place in the store, after making a most important contract depending for its validity in keeping them elsewhere. Nor would the facts adverted to be sufficient to bring home to the agent who saw no other books or records, knowledge or notice that the few bills or invoices which the insured was examining on the counter constituted

the sole records of his business. The circumstance that the agent inquired if the insured kept money (not included in the iron safe clause) in the store and was told that the cash receipts were taken to the insured's house at night—does not support the contention of waiver, but, on the contrary, would reasonably carry the inference, both to the insured and to the agent, that the books and inventories which were the subject of the contract, would likewise be removed from the building at night.

Slight circumstances have been allowed by the Courts in insurance cases to support verdicts as constituting some evidence of waiver or estoppel, but we think to sustain the plaintiff's contention in this case would be going beyond reason. The plaintiff's duty was to have the conditions of the contract in mind, and to observe them, and he cannot shift the duty on to the shoulders of the defendant. *Gaillard v. Globe & Rutgers Fire Ins. Co.,* 160 S. C., 386, 158 S. E., 727.

The respondent relies upon the case of *Trakas v. Globe & Rutgers Fire Ins. Co. of New York,* 141 S. C., 64, 139 S. E., 176, 53 A. L. R., 1119, to support his theory of waiver: but the facts in that case are quite different. In the *Trakas case,* the soliciting agent saw the insured's books, invoices, and inventories in a wooden desk on the counter in the store; and, after the issuance of the policy, the agent, whose office was just two doors from the insured's place of business, was in and out of the store almost every day observing this condition, from the day the policy was delivered until the fire destroyed the insured's property.

The iron safe clause relates only to the stock of merchandise, and noncompliance with it does not necessarily affect defendant's liability with respect to the other property insured. It was not intended to apply to the building itself, the store furniture, or the fixtures in the building; and notwithstanding the policy expressly provides that it shall be void and no action shall be maintained upon

it, if any of the warranties are violated, the rule established by the great weight of decisions is that in the absence of fraud or any act condemned by public policy, the contract is divisible, and recovery may be had for the loss of other property not affected by the particular warranty broken. The risk as to the building, furniture and fixtures was in no wise increased by a failure to preserve an account of the mercantile transactions. *Trakas v. Globe & Rutgers Fire Ins. Co., supra; Spradley v. Georgia Home Ins. Co.,* 112 S. C., 151, 98 S. E., 285.

While it doubtless would have been more technically correct for the appellant to have moved for a non-suit confined to the insurance covering the stock of goods instead of on the whole case, we do not think that his failure to do so is fatal to the present appeal. The question at issue was that of waiver, and he was entitled to a ruling that no waiver had been shown. With waiver non-existent, then the insurance on the stock of goods would have gone out of the case. The same practice followed here by appellant was pursued in *Spradley v. Georgia Home Ins. Co., supra.* In the *Spradley case* the appellant moved for a nonsuit and later for a directed verdict on the whole case, which involved divisible items of property insured for separate amounts. The trial Court ruled that the contract was divisible, and granted the motion as to only one of the items of property.

The defendant has appealed assigning error because the lower Court refused to grant a nonsuit as to the insurance coverage on the stock of merchandise, and refused to grant a new trial. We think that the nonsuit should have been granted. This holding, however, does not mean, necessarily, a new trial of the case. This Court has the right to affirm the judgment below conditionally. *Mims v. Bennett,* 160 S. C., 39, 158 S. E., 124, 78 A. L. R., 360; *Johnston v. Bagger,* 151 S. C., 537, 149 S. E., 241. The only error in the judgment is that the amount of the re-

covery is excessive. This was brought about by submitting to the jury the question of the insurance coverage on the stock of goods, which should have been excluded. The excess of the recovery is easily capable of correction by computation and may be segregated.

It is admitted that the sum of $500.00 for which ■ the store was insured was not subject to the three-fourths valuation clause, and constituted a fixed, liquidated amount. The furniture and fixtures were insured for $200.00, and were subject to the three-fourths valuation clause. As shown by the uncontradicted evidence, they were worth $225 at the time of the fire. Under the instructions of the Court, the jury could have included in their verdict only three-fourths of $226.00, which amounts to $169.50. Adding this latter amount to the insurance of $600.00 on the store, we get $769.50, which is the correct amount of the judgment. The difference between $769.50 and $978.75, the amount of the verdict, is $209.25, and this amount represents the excess which should be remitted by the plaintiff.

It is the judgment of this Court that a new trial be granted, unless the plaintiff, within fifteen days from the sending down of the remittitur, shall remit on the record the sum of $209.25, in which case the judgment for the plaintiff will be the sum of $769.50, covering the loss of the building, the furniture and the fixtures.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.