This is an action upon a policy of burglary insurance in force and effect on November 16, 1946, and December 14, 1946, when the insured claims to have sustained losses by burglary from his grocery store at 1909-11 Broad Street, in Chattanooga, Tennessee. The jury awarded a recovery of $499.01 for the first loss and $1,266.72 for the second. Judgment was entered after defendant's motion for a new trial was overruled and the present appeal in error resulted.
The insurer, by the assignments, here renews its primary defenses, (1) that the insured failed to comply with the policy provisions by keeping an inventory and *Page 164 
records from which it could be determined with reasonable certainty the extent of the loss and failed to furnish due proof of loss of the character and within the time provided by the policy, (2) that no agent or representative of the Company had authority to waive these policy provisions and they were not validly waived either before or after the alleged losses occurred, (3) that there is no material evidence of a burglary loss, and (4) that the court erred in the charge to the jury and in declining to charge defendant's special requests.
The pertinent policy provisions governing the first question are:
"Exclusions. That this Policy does not apply herein: (b) If Named Insured does not regularly keep books and accounts in such manner that the exact amount of the loss can be accurately determined therefrom by the Company."
"G. Proof of Loss. Inventory. . . . Affirmative Proof of Loss or Damage, under oath, on form provided by Company must be furnished Company at its United States Head Office in New York, N.Y., within Sixty (60) Days from date of discovery of such Loss or Damage. Such Proof shall contain (a) complete inventory of all Property stolen or damaged, (b) stating original cost, (c) actual cash value of each article at time of loss (d) and amount of loss thereon, and shall also contain statement in detail as follows: (e) describing damage done to Property; (f) defining interest of Named Insured in Property for which indemnity is claimed; (g) reasonable evidence of commission of any crime, to which loss or damage to Property covered hereunder was due, and of time of its occurrence . . .
"No notice to any Agent, or knowledge possessed by any Agent or by any other Person shall be held to effect *Page 165 
a Waiver or Change in any part of this Policy nor estop Company from asserting any right under Terms of this Policy; nor shall Terms of this Policy be waived or changed, except by Endorsement issued to from a part hereof. . . ."
Since the insured admits that he kept only a dollar inventory from which it would be impossible to arrive at a complete inventory in itemized form of the articles stolen stating the original cost or actual cash value of each as required by Section G above quoted, it seems important to determine at the outset whether (a) the issuing agent waived the provision above quoted requiring the insured to keep books and accounts in such manner that the exact amount of the loss can be accurately determined by the Company and (b) if there was such a purported waiver by the agent whether the action and knowledge of the agent is to be imputed to the Company. If the Company waived the requirement of keeping books and inventories before the loss occurred, it would seem to follow that it could not insist, after the loss had occurred, upon the insured furnishing a proof of loss containing detailed information which it would be impossible for him to furnish under the system of bookkeeping in the contemplation of the parties when the policy was issued.
Both the insured and the issuing agent, Mr. Draper, testified that the matter of keeping inventory and records was discussed between them before the policy was issued and that the insured explained to the agent that in the operation of a grocery store like that conducted by insured it was impossible to keep a complete inventory of the numerous items in stock; that the insured, following the prevailing practice employed by chain grocery stores and other self-service groceries, kept only a dollar inventory, i.e., the stock would be charged with each day's *Page 166 
purchases at the retail price and credited with each day's sales, with appropriate markups and markdowns in event of price fluctuations; that by this method it would be possible to determine at a given time the dollar value of the stock on hand but impossible to determine the number of each of some 3,500 different items carried in stock.
It is a principle of frequent application in other types of insurance that where the insurer at the time of issuing the policy has knowledge of existing facts which, if insisted upon, would render nugatory the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts and the insurer is estopped thereafter from asserting a breach of such conditions. See Insurance Company v. National Bank, 88 Tenn. 369, 12 S.W. 915, involving a condition in a fire policy as to the title of the insured; Life Casualty Insurance Co. v. King, 137 Tenn. 685, 195 S.W. 585, involving a condition that an applicant for life insurance be in sound health at the date the policy was issued; Hayes v. Commonwealth Life Ins. Co., 8 Tenn. App. 554, also involving health insurance; Johnson Transfer Freight Lines, Inc., v. American Nat. Fire Ins. Co., 168 Tenn. 514,79 S.W.2d 587, 99 A.L.R. 277, involving a policy of cargo insurance. Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168, involved a policy of burglary insurance, but recovery was resisted on the ground of a change of title and not upon a breach of a condition requiring the keeping of books, inventories and other records, though the principle under consideration was applied to hold the insurer estopped to defend upon the ground of a change of title.
The thesis of all these cases is well stated in Life *Page 167 Casualty Insurance Co. v. King, supra [137 Tenn. 685, 195 S.W. 587]:
"The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration."
We think of no reason why these principles do not apply alike to burglary insurance and, if bound by the act of the issuing agent, the Company cannot now complain of the failure of insured to take and maintain an inventory of the items in stock.
Can a waiver of the condition be predicated solely upon knowledge acquired by the agent before the policy was issued notwithstanding the provision of the policy above quoted expressly providing that no agent shall have power to waive the terms of the contract?
Code Section 6087 expressly provides that persons soliciting insurance, excepting fire insurance brokers, in all matters relating to the application and policy are to be regarded as the agent of the Company and not of the insured notwithstanding provisions in the policy to the contrary.
A number of cases might be cited holding that, under the statute, notice to the issuing agent of extraneous conditions prohibited by the policy and purporting to render it nugatory is notice to the insurer. These cases reject the contention that a policy provision expressly providing against any waiver except by an authorized agent of the *Page 168 
company in writing overrides and supersedes the provisions of the statute. They include Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168; and Industrial Life Health Ins. Co. v. Trinkle, Tenn. App., 204 S.W.2d 827.
The undisputed proof shows that insured kept a cash inventory as contemplated at the time the policy was issued and maintained a standard of bookkeeping comparable to others engaged in similar mercantile pursuits. A substantial compliance only was required as to the bookkeeping provision, Cates v. Fidelity-Phoenix Ins. Co., 7 Tenn. App. 513, and we think there is material evidence to support a jury finding of such compliance.
After the first loss insured furnished a proof of loss and after the second loss he was in continuous negotiations with attorneys for the insurer who were engaged by it to investigate and adjust the loss. He was questioned at great length under oath by the attorneys as to every aspect of his alleged loss, including the evidence of the burglary, the extent of his stock loss, method of doing business, method of bookkeeping and keeping inventories. He testified that he gave the attorneys every bit of information requested and was advised by them not to employ an attorney and that no other information was needed or required. It is true this evidence is contradicted by the attorneys both of whom are of the highest standing in the profession. However, the insured prevailed before the jury and we have no right to determine the preponderance of the evidence or the credibility of the witnesses. It also appears without dispute that the attorneys went to the scene of the alleged burglaries to investigate the circumstances and that the insured furnished an auditor's statement purporting to show the loss based upon a dollar inventory and, according to insured's *Page 169 
testimony which we must assume the jury accepted, later told insured that nothing further was required.
We think all of this, taken together, constitutes a waiver of the policy provision with respect to proof of loss. Ligon's Adminstrators v. Equitable Fire Ins. Co., 87 Tenn. 341, 10 S.W. 768; Home Ins. Co. v. Wheatley, 6 Tenn. App. 580.
It is insisted the attorneys for the insurer, while carrying on negotiations and investigating the alleged loss, advised insured to submit a proof of loss "in accordance with the term of the policy". Insured admits that such statements were made but says that later, after he had furnished additional information, he was advised that nothing further would be required. Moreover, the suggestion was that proof of loss be furnished "in accordance with the provisions of the policy". The policy required a complete inventory of all property stolen, the original cost, the actual cash value of each article and the amount of loss thereon. Under the system of making inventories of the stock in vogue at the insured's place of of business, as the insurer knew, it was impossible to furnish a proof of loss "in accordance with the provisions of the policy".
For the reasons indicated, we conclude that there was no error in declining to grant the motion for peremptory instructions because of a breach by the insured of the policy provisions.
We are also of opinion there was sufficient evidence of the amount of loss to go to the jury. As to the first loss claimed, the insured and his store manager testified that the items taken had not been placed on the shelves but had come to the store on the day of the alleged burglary and were still unwrapped when the store closed on Saturday night, November 16, 1947. As to the second *Page 170 
alleged burglary, the insured submitted a statement of his dollar inventory showing a diminution in the amount claimed. The fact that the claim is supported entirely by the testimony of the insured himself as to the last alleged burglary would not warrant the court in directing a verdict for the insurer.
The insistence that there is no material evidence to sustain plaintiff's theory of a burglarious entry is based upon the argument vigorously pressed by learned counsel for defendant that it would have been impossible for the burglar to enter through the space left by the breaking of a window pane in the rear window of the store as claimed. According to the evidence most favorable to plaintiff, the space left by the removal of the window pane was 7 x 18 inches. It is plaintiff's theory that the burglar could have assisted a small child in going through this space and that the child let the burglar in at the front door which it is shown could be opened from the inside without a key or that the child could have passed the groceries out through the window. In support of this theory, it is shown that mud was found on the window sill both outside and inside and that there were small footprints on the floor. On the occasion of the second alleged burglary, it was shown that the store was in disarray and crumbs and wrappers were found on the floor.
We cannot say as a matter of law that a conclusion from the facts shown that a child or small person entered through the aperture left by breaking out the window pane is inadmissible. To overturn this conclusion on appeal we would be compelled to say that it would be a palpable impossibility for a child or small person to enter through the space and this we cannot do. *Page 171 
An attack is also made upon the reasonableness of the insured's testimony in certain repects but this also was for the jury to consider along with all the circumstances in arriving at a conclusion deemed most consistent with the true facts.
Certain assignments are directed to the argument of counsel for the insured but the argument complained of appears only in the motion for a new trial and not in the bill of exceptions. The motion for a new trial can be considered only as a pleading and not as a reflection of what occurred at the trial. For this reason, we cannot consider these assignments. Hagood v. State,183 Tenn. 49, 190 S.W.2d 1023; Hood v. State, Tenn. Sup.,216 S.W.2d 14, 15.
Twelve of the assignments are directed to the refusal of the court to charge certain special requests and to alleged errors in the charge as given. They are controlled in the main by what we have already said and to consider each separately would extend this opinion to undue length. We have carefully considered all of these assignments and find no error. The charge as given, is full, fair and complete.
Under the last twenty-two assignments it is insisted there is no evidence to support the specific findings on the issues propounded to the jury. They, likewise, are controlled by what we have already said and need not be separately considered in this opinion. As we have indicated, we have concluded that there is material evidence to support the findings of the jury.
On the whole case, we find no reversible error and it results that all of the assignments are overruled and the judgment affirmed with costs.
Hale and Howard, JJ., concur. *Page 172