**CLARK & JONES, Inc.**

v.

**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY.**

No. 2147.

United States District Court,
E. D. Tennessee, N. D.

Feb. 7, 1955.

Frost & Jacobs, Cincinnati, Ohio, Poore, Cox, Baker & McAuley, Knoxville, Tenn., for plaintiff.

Dinsmore, Shohl, Sawyer & Dinsmore, Richard W. Todd, Cincinnati, Ohio, Clyde W. Key, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Defendant has moved for summary judgment of dismissal, and the parties have stipulated that the judgment rendered pursuant to the motion may be one on the merits, as well.

This is an action to recover $9,587.50, represented in the complaint as funds stolen from Clark & Jones by Neil Godwin, an employee of plaintiff in its Knoxville store. Clark & Jones is a dealer in musical instruments and related goods, including music books and sheet music. Defendant was the insurer against such loss as that charged against Godwin. Decisive parts of the record are the insurance policy, stipulations filed by the parties, and answers to interrogatories.

A requirement placed upon the insured by policy provision was that the "insured shall keep verifiable records of all property covered by this policy." It has been

stipulated that on June 30 of each of the years 1946, 1947, 1948, 1949, 1950, and 1951, plaintiff took inventory of such items as sheet music and music books by stacking them according to kind and price and measuring each stack in feet and inches, and that all other items were counted; that inventories thus kept disclosed no shortage of merchandise during the five-year period immediately prior to November 17, 1951. In answer to interrogatories plaintiff has admitted that it did not claim to have any evidence establishing that on November 17, 1951, there was any merchandise, inventory or cash shortage in its store in Knoxville, Tennessee, other than the confession of Neil Godwin. Plaintiff and the corporation of which it is a subsidiary have stipulated that they are unable to find any claim which defendant insurer has paid to either of them without being supported by the insured's records; also, that though it is highly impractical and contrary to custom to keep detailed records of sheet music bought and sold, such records could be maintained. It has further been stipulated by Clark & Jones and by defendant that records were kept of the identity and quantity of musical instruments, radios and other large items of merchandise during the period in question and that those records, coupled with the aforesaid inventories, do not disclose any shortage in those items during that period. Hence, the shortage, if any occurred, was in music books and sheet music. But it has been stipulated, despite the stack and measurement inventories made during the relevant five-year period, that "plaintiff has no records by which it can establish that any shortage · existed in said sheet music, music books or other items," or in its securities or cash during that period.

The confession of Neil Godwin is pleaded as follows:

"On November 17, 1951, and at the time of the discovery above referred to, the said Neil Godwin stated both orally and in writing, voluntarily and in the presence of witnesses, that during the five year period immediately prior thereto that he had taken from the plaintiff's funds and appropriated for his own use approximately Six Dollars and Fifty Cents ($6.50) per day. The said Neil Godwin died on or about December 11, 1951."

As heretofore mentioned, plaintiff Clark & Jones has admitted in response to interrogatories that the confession of Neil Godwin is the only proof this plaintiff has of default on the part of Godwin. Opportunity has been afforded plaintiff to furnish additional evidence, but by stipulation it is now agreed that plaintiff has no additional evidence and for that reason agrees that the case may be disposed of as the record stands.

From careful study of the record and briefs of counsel, the Court is of the opinion that the motion of defendant for summary judgment should be sustained and the case dismissed on the merits.

The requirement that the insured keep verifiable records has an obvious purpose, namely, discovery of defaults insured against. Primarily its purpose from the insured's viewpoint was to lessen the risk, and a verifiable record, supported by periodic inventories, should have disclosed cumulative thefts of any substantial volume. Records were kept of instruments and no shortage existed there. The confession indicates that any theft which occurred consisted of taking money from the cash register or in failing to register cash receipts for articles sold. The cash register would have disclosed its own shortage, had money been taken from it after being placed therein in the regular manner. If sales were made and receipts not put in the cash register in the regular manner, decline of inventory as compared with periodic receipts should have disclosed the thefts. As there was no decline of inventory in the instrument department, and as the misappropriations were daily affairs and in relatively small sums, theft from small-article sales is indicated.

It is alleged in the complaint and not controverted that Neil Godwin "was employed by the plaintiff in regular service

as a retail sheet music sales person" in plaintiff's Knoxville store. If the alleged confession of Godwin was true, his misappropriations would have been reflected in a decline in sheet music inventory. In the absence of exact proof on the subject, let it be assumed conservatively that sheet music sold of $1 per copy, that it stacked 100 copies per inch, and that $6.-50 of misappropriation per day amounted to $1,950 per year. In one year, on that basis, the stack measure would have diminished by 19½ inches. In five years the diminution would have been 97½ inches, or 8 feet and one and one-half inches, a decline that even a most perfunctory inventory would have disclosed. These figures, of course, are subject to variation as prices varied, and as stacks varied as between sheet music and music books, a variation, however, that would have been subject to compensation by increase in thickness along with increase of price of an article. This observation as to decline of inventory indicates either that little attempt was made to keep any check on sheet music and related inventory, or that the confession of Godwin is largely, if not wholly, devoid of any reliability. The Court has judicial knowledge that plaintiff's store is a small one, and that space for inventory is quite limited. Such a relatively large decline of inventory as that estimated above would certainly have been discovered as a result of any serious measure. If the decline existed in fact, the insurer was greatly prejudiced by its lack of discovery.

Though the inventory could have been kept at normal level by new purchases, a verifiable record of inventory would have disclosed this turnover in stock, for which there should have been corresponding sales receipts. A verifiable record of loss would include such records as would disclose a loss, had one occurred.

As applied to fire policies, the clause requiring inventories and safekeeping of records of the same, is commonly referred to as the "iron safe clause." In this state it is an enforceable clause. Kustoff v. Stuyvesant Ins. Co., 160 Tenn. 208, 212, 22 S.W.2d 356. Absolute accuracy in compliance is not required, but there must be substantial compliance. Niagara Fire Ins. Co. v. Bryan & Hewgley, Inc., 6 Cir., 195 F.2d 154; Accident & Casualty Ins. Co. v. Lasater, 32 Tenn. App. 161, 222 S.W.2d 202.

The same rules as to record keeping and substantial compliance are applied with equal force to policies other than fire policies. Accident & Casualty Ins. Co. v. Lasater, supra; General Accident, Fire & Life Assurance Corp. v. Schero, 5 Cir., 151 F.2d 825; Standard Accident Ins. Co. v. Southwestern Trading Co., 5 Cir., 154 F.2d 259; Aetna Casualty & Surety Co. v. Reliable Auto Fire Co., 8 Cir., 58 F.2d 100; Bank of Union v. Fidelity & Casualty Co. of New York, 8 Cir., 62 F.2d 1040.

As heretofore observed, the parties have stipulated that inventories and records disclosed no shortages in inventories, securities or cash. Except for Godwin's extrajudicial confession, there is no evidence of a shortage in any way chargeable to him, no proof of any theft. At the time the confession was pleaded by amended complaint, defendant objected to it and moved that the pleading be stricken. The motion was overruled for reasons appearing in the Court's memorandum of June 5, 1953. 112 F.Supp. 889. In this state, however, a person's confession of having committed a crime is admissible subject to a certain condition. Ordinarily it is first required that the corpus delicti be established. When the crime has thus been proved, a confession by a person that he committed the crime is then admissible. Ashby v. Stone, 124 Tenn. 684, 139 S.W. 872. If the confession is admitted first, it loses its weight unless the corpus delicti is afterwards established. Ashby v. Stone, supra; Williams v. State, 80 Tenn. 211.

Although this is not a criminal prosecution of the party alleged to have confessed, the reasoning with respect to confessions would have the same force here. A confession by a former employee, since deceased, that he misappropriated $9,587.50 of funds of Clark

& Jones, cannot support a recovery from the insurer where records and inventories disclose no shortage at all. Not only is the corpus delicti not established, but the evidence relating thereto has the opposite effect of tending to destroy the force of the confession. To be effective, corpus delicti evidence should be confirmatory, not contradictory.

Let an order be prepared sustaining defendant's motion for summary judgment and dismissing the case on its merits.