**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellant,**

v.

**THOMAS & HOWARD COMPANY OF SPARTANBURG, SOUTH CAROLINA, Appellee.**

**No. 7170.**

United States Court of Appeals Fourth Circuit.

Argued April 25, 1956.

Decided May 17, 1956.

**216**

L. W. Perrin, Jr., Spartanburg, S. C. (Edward P. Perrin and Perrin & Perrin, Spartanburg, S. C., on the brief), for appellant.

William C. Lyles and Frank A. Lyles, Spartanburg, S. C. (Lyles & Lyles, Spartanburg, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and THOMSEN, District Judge.

DOBIE, Circuit Judge.

This is an appeal by American Mutual Liability Insurance Company (hereinafter called the insurance company) from a judgment in favor of Thomas & Howard Company, the insured, in an action on a comprehensive crime policy. The insured is a wholesale grocery company located in Spartanburg, South Carolina, and is one of twenty-four affiliated corporations named as insureds in this policy. A civil action was instituted by the insured against the insurance company in the United States District Court for the Western District of South Carolina for an alleged loss of inventory of the value of $50,000.00, which it sustained between May 20, 1949, and September 23, 1951, as a result of dishonesty or fraud of three of its employees acting in collusion and in conspiracy with several merchants.

The District Court referred the case to a Special Master, who, after taking testimony in February and April, 1954, concluded that there was a loss to the insured of $25,000.00, which it was entitled to recover from the insurance company, together with interest at the legal rate from August 20, 1952, the date of the filing of insured's proof of loss. The insurance company filed objections. By Order dated January 7, 1956, the Findings of Fact and Conclusions of Law of the Master were confirmed and adopted by the District Court and judgment for the insured was thereafter entered. The insurance company has appealed to us.

In the action below, the insurance company set up two principal defenses, upon which it still relies: (1) violation of and failure by insured to comply with the notice of loss and proof of loss provisions of the policy; and (2) violation of and failure by insured to comply with the record keeping provision of the policy. Either could bar recovery. In addition, the insurance company questions the admissibility of certain verbal statements purported to have been made by the so-called "conspirators" and related to the Master by other witnesses. Finally, the insurance company questions whether insured introduced any competent evidence by which the amount of its alleged loss, as found by the Master, could be accurately determined and established.

We find it necessary to answer only one of these questions. The insured violated and failed to comply with the record keeping provision of the policy, there was no waiver of this requirement, and accordingly the insured is barred from recovery. The judgment of the District Court is, therefore, reversed.

The following provisions of the policy are pertinent:

"Coverages

"A—Dishonesty of Employees

"To indemnify the insured for loss through dishonesty or fraud of the employees, whether acting alone or in collusion with others, of money, securities and other property, including that part of any inventory shortage which the insured shall conclusively prove to have been caused by dishonesty or fraud on the part of any of the employees.

\* \* \* \* \* \*

"This Policy Is Subject To The Following Agreements, Limitations And Conditions Which Conditions Are Conditions Precedent To Any Recovery Hereunder.

\* \* \* \* \* \*

"9—Records

"The insured shall keep verifiable records of all property covered by this policy."

Thomas & Howard Company of Spartanburg, South Carolina, is one of twenty-four affiliated corporations named and insured under the subject policy and is one of the eight corporations in the Columbia group. Late in 1948 the twenty-four corporations considered obtaining a comprehensive crime insurance policy. A binder was issued, effective May 20, 1949, for the selected policy. Within thirty days after the issuance of the binder, Orr, the manager of the insured here, and the other managers of these corporations named as insureds in this policy, were advised of its issuance and that the policy included provisions regarding dishonesty of employees. The policy itself was not delivered until the fall of 1950 and was kept in the Columbia office.

In July, 1951, Orr suspected an inventory loss was being sustained and hired a private investigator. As a result of this investigation, the insured knew by September 23, 1951, that three of its employees had been stealing items of inventory from its warehouse and selling these items to four merchants. The employees were discharged during the month of September, 1951, and were thereafter tried by a state court on an indictment for conspiracy. The insured did not give to the insurance company any notice of the suspicion of loss of inventory by dishonesty of employees or of its actual knowledge of loss of inventory as a result of dishonesty of employees until its letter of May 16, 1952, addressed to the home office of the insurance company. The reason given for the delay in reporting the loss sooner, as required, was that the manager did not have knowledge of the full coverage under the policy.

On May 20, 1952, Anderson, the insurance company's district claims manager, met with Orr, insured's manager, and with Abernathy, the special investigator, to discuss the loss and the delayed claim for this loss. On inquiry from Orr as to what Anderson thought the home office would decide, Anderson told Orr that he did not have any opinion but that his recommendation was going to be that the notice of the claim be accepted under a full reservation of all policy rights.

At this meeting Orr and Abernathy reviewed with Anderson the investigation by Abernathy and the manner in which the conspiracy had operated. Orr advised that the insured had collected $3,000.00 in restitution from Whitehead, one of the four merchants, and that according to insured's estimate $3,000.00 in goods was what Whitehead had received. At this meeting Orr urged that the insurance company waive determination of the amount of the loss by an inventory count. Orr explained to Anderson what an inventory count meant and would involve, and in urging that the insured be relieved of showing the amount of its loss by an inventory count stated that the insured would be willing to reduce the amount of its claim by what an inventory count would cost, which Orr told Anderson would be $5,000.00 to $6,000.00. Again Anderson told Orr that he had no authority and that he had no instructions.

At the very time on May 20, 1952, that Orr was explaining to Anderson what an

inventory count was, what it consisted of and, involved, and was urging upon Anderson that an inventory count not be required, all inventory listings necessary for making an inventory count of the period involved in this case had been destroyed, according to Orr's testimony. In brief, Orr was representing that the insured had records by which the items which might be missing as the result of the dishonesty of employees and the values thereof could be established when in fact the insured had destroyed such records.

By letter dated June 11, 1952, Anderson advised the insured as follows:

"Referring to our discussion of the above loss on May 20, 1952, our home office has authorized, in the apparent absence of prejudice, acceptance of the above claim under a full reservation of all our policy rights as we do not feel that we should waive the breach of policy conditions concerning failure to report and failure to file Proof of Loss, at this time."

On July 7, 1952, at a meeting of Orr, Reynolds (auditor of the eight corporations comprising the Columbia group), and Anderson, waiving by the insurance company of record proof of the amount of loss was again urged upon Anderson. (Reynolds at this time did not know that the inventory listings had been destroyed by Orr.) According to Reynolds, at this meeting on July 7, 1952, Anderson said "that he did not think that his company would require a lengthy, time consuming and expensive inventory item count, so long as we could provide some evidence from the books and records that a loss had occurred and the amount of that loss." Orr withheld the information that the insured, due to destruction of parts of its records, had no records by which the amount of its loss could be determined.

Upon Orr's requesting of Anderson proof of loss forms, such forms were furnished to Orr with Anderson's letter to Orr of August 14, 1952. In that letter Orr was advised that the home office requested that supporting detail be attached to the proof of loss forms, which supporting detail should consist of detail from the insured's records.

Instead of attaching supporting detail from its records, the insured furnished only an affidavit by Orr and an affidavit by Reynolds, stating their conclusions without factual basis in records of the insured that the loss amounted to in excess of $50,000.00. Subsequently Orr furnished to Anderson various memoranda of purported conversations compiled by Abernathy and several purported statements of several persons. The information that the records of the insured, which would permit a record determination of the amount of the loss, had been destroyed continued to be withheld from the insurance company.

Upon the filing of insured's proof of loss, Anderson immediately commenced investigation, seeking to obtain information from the persons purported to have been involved in the conspiracy. In addition, the insurance company employed the accounting firm of James E. Glass, Jr., to investigate at the office of the insured in Spartanburg. This firm is a firm of independent accountants and auditors with offices in Philadelphia and New York. George K. Johnston, a C. P. A. of this firm, conducted the investigation at the office of the insured. Johnston was at the office of the insured in December, 1952. He specifically requested the inventories for the period involved in this claim. It was at that time that Orr finally revealed, admitted or stated that the insured did not have such inventory listings and that they had been destroyed.

Johnston's report dated March 17, 1953, was received by Anderson at his office in Greenville, South Carolina, on March 20, 1953, and was promptly forwarded to his home office in Boston, Massachusetts. It was through this report that it was first disclosed to the insurance company that the insured did not have records by which it could be determined what items of inventory might be missing and the values thereof.

By letter dated April 3, 1953, Anderson notified the insured as follows:

"After very careful consideration of your claim our home office is of the opinion that you failed to notify us of the loss as required by your policy contract, that you failed to file proof of loss within the period specified in the policy and also that the basis on which you have attempted to prove the alleged loss is improper. For the foregoing reasons we regret that it is necessary for us to deny any liability."

An inventory count begins and ends with an inventory listing. An opening inventory listing is a physical count and a listing of all items on hand at the beginning of the period in question with such listing extended to show the value of each such item at cost or market, whichever is lower. To the opening inventory listing are added all items purchased during the period in question, and the value of each such item is shown at cost or market, whichever is lower. All items which are sold during the period in question are deducted at sales price less mark up. This procedure discloses all such items which should be on hand at the end of the period in question and the values of such items. A comparison of the results of this procedure with a closing physical inventory listing as of the close of the period in question discloses any items which might be missing and the value of any such items.

The insurance policy required that the insured keep verifiable records of all property covered by the policy. That it was not necessary to maintain a perpetual inventory system is made quite clear by our opinion in American Mutual Liability Insurance Company v. Thomas & Howard Company of Columbia, South Carolina, 4 Cir., 228 F.2d 550, involving the same policy and another company in the same group of corporations. There the plaintiff did preserve its inventory listings with invoices of subsequent purchases and sales, as contrasted with the situation before us. Quoting from the District Judge's charge, we said, 228 F. 2d at page 552, that " 'While no particular form of books and records are required by such a provision, it does require the insured to keep such books and records as will accurately reflect the amount of a loss which he claims.' "

This Thomas & Howard Company of Spartanburg failed to do. Instead of keeping, it destroyed, according to Orr, the insured's manager, the inventory listings of 1948, 1949 and 1950, which were necessary for determining and establishing what items of inventory may be missing and the values thereof, with reasonable certainty and accuracy. Orr testified that since he went with Thomas & Howard in 1942, insured had not kept any fiscal inventory for more than one year, that the December 31st. inventory of each year was kept twelve months and was then destroyed.

When insured was asked what records were kept and introduced into evidence, these were listed:

1. The Year End 1951 Inventory.

2. Insured's Income Tax Returns, State and Federal, for the years 1942 through 1952, inclusive.

3. Insured's Merchants' Stock Statements for 1950 and 1951.

4. Insured's Ledger Sheets reflecting merchandise inventory transit, merchandise inventory stock, mechandise inventory stamps, 1938 through 1952, with a lump sum year-end figure for each year.

Such records are of little or no value and cannot be used for determining what items of inventory might be missing and the values thereof, for the simple reason that there is no opening inventory listing. This, Orr insured's manager, admitted; Reynolds, auditor of the Columbia group, so testified; and the certified public accountant's report so stated. A single total figure for the inventory valuation at the end of the year, as reflected in these ledger sheets and income tax returns, is of practically no help in determining the amount of the losses.

That record keeping provisions of a policy are valid and that substantial compliance by the insured is required is the settled law of South Carolina. Evans v. Century Insurance Co., Limited, 201 S.C. 273, 22 S.E.2d 877; Crowley v. North British & Mercantile Ins. Co., D.C., 70 F.Supp. 547, affirmed, 4 Cir., 164 F.2d 550. Failure to comply with these provisions precludes recovery. Evans v. Century Insurance Co., Limited, supra. See, also, Clark & Jones, Inc., v. American Mutual Liability Insurance Company, D.C., 129 F.Supp. 282, where recovery was denied for failure to comply with the identical record keeping provision.

We find it unnecessary to discuss the other issues raised by this appeal and accordingly have omitted some facts not here pertinent. Suffice it to say that all acts and things done by the insurance company from the time notice of loss was given to the time of the denial of the claim were done under and during the continuance of insured's misrepresentation that it had records by which it could be determined what had been lost as a result of dishonesty of employees and the values thereof.

The failure on the part of the insured to keep such books and records as would accurately reflect the amount of the loss which it claims, has deprived the insurance company completely of its protection against fraudulent claims on the part of the insured, which manifestly was the purpose of the record keeping provision of the policy. Insured's violation of this condition precedent to recovery provision of the policy has made it impossible for the insurance company at any cost in time or money to protect itself against a fraudulent claim by check or audit of records. Accordingly, we think recovery by the insured should be barred.

The judgment of the District Court is reversed and the case is remanded to that court with instructions to enter judgment in favor of American Mutual Liability Insurance Company.

Reversed.