MARYLAND CASUALTY COMPANY, Plaintiff in Error, v. LOWELL GORDON, HOMER K. LOVIN, and PAUL SOUTHERLAND, Defendants in Error.

MARYLAND CASUALTY COMPANY, Plaintiff in Error, v. KATHLEEN GORDON, b/n/f HOMER K. LOVIN, and PAUL SOUTHERLAND, Defendants in Error.

MARYLAND CASUALTY COMPANY, Plaintiff in Error, v. JAMES STUFFEL, JR., Defendant in Error. —371 S. W. (2d) 460.

Eastern Section, at Knoxville. March 19, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

(1)

2 

Paul Capps, Morristown, John B. Rayson and Stuart Dye, Knoxville, Kramer, Dye, McNabb, & Greenwood, Knoxville, of counsel, for plaintiff in error.

Noe & Reed, Morristown, for defendants in error.

Clay Walker, Morristown, for James Stuffel, Jr.

BEJACH, J. These consolidated causes involve appeals in error by the Maryland Casualty Company from

judgments against it for $3,500 in favor of Lowell Gordon, Homer K. Lovin and Paul Southerland, for $4,500 in favor of Kathleen Gordon, b/n/f Homer Lovin and Paul Southerland, and for $2,000 in favor of James Stuffel, Jr. These judgments resulted from former judgments in the Circuit Court of Hamblen County against Homer K. Lovin, which judgments had been for $5,600 in favor of Lowell Gordon, for $4,500 in favor of Kathleen Gordon, his wife, and for $2,000 in favor of James Stuffel, Jr., which suits had been defended by the Maryland Casualty Company on behalf of Paul Southerland and Homer K. Lovin. James Stuffel, Jr. had been a guest riding in the automobile of Homer K. Lovin. These suits resulted from a two car collision in which one owned and driven by Homer K. Lovin collided with one driven by Lowell Gordon, in which he and his wife, Kathleen Gordon were riding. Mr. and Mrs. Gordon, as well as James Stuffel, Jr., were injured in the accident, and the suits which resulted in the aforesaid judgments followed. Prior to the institution of the first set of suits, Paul Southerland had applied for and obtained from the Maryland Casualty Company, through the Bible Insurance Agency, a liability insurance policy with $5,000—$10,000 and $5,000 limits which insured an automobile owned by his stepson, Homer K. Lovin, who was at that time 20 years of age, and living in the household of Paul Southerland. This automobile was the one involved in the accident out of which grew the aforesaid suits. The policy in question was issued as an Assigned Risk policy. The application discloses that Paul Southerland owned no automobile, had no driver's license, and did not intend to drive the automobile insured under the policy to be issued. It also discloses

that said automobile was to be driven principally by Homer K. Lovin, the application reciting "sixty-five per cent of the time." In the trial of the suits filed by Lowell Gordon, his wife Kathleen Gordon, and James Stuffel, Jr., no judgment was recovered against Paul Southerland. The suit of James Stuffel, Jr. had not named him as a defendant, and in the suits of Lowell Gordon and Kathleen Gordon, nonsuits had been taken.

After recovery of the judgments by Lowell Gordon, Kathleen Gordon, and James Stuffel, Jr., executions were issued which were returned *nulla bono,* and said judgments became final. Suits were then filed by each of these judgment creditors, in which they joined as plaintiffs Homer K. Lovin and Paul Southerland, and in which suits they undertook to recover from the Maryland Casualty Company the amounts of said former judgments. The Maryland Casualty Company filed pleas of nil debit and non assumpsit. These causes were also consolidated and tried before circuit Court Judge John R. Todd, without the intervention of a jury. All three suits were resisted by the Maryland Casualty Company on the ground that its policy of insurance did not obligate it to pay said judgments because its policy of insurance did not cover the judgments recovered. This defense was predicated on two grounds, one, that Paul Southerland had no insurable interest in the automobile involved, and two, that false representations had been made in the application for insurance. In addition, with reference to the suit on the judgment in favor of Lowell Gordon seeking recovery of the amount of his judgment for $5,600, the Maryland Casualty Company presented the defense that since its policy was limited to a coverage of $5,000 on any one person, and since

Lowell Gordon's judgment for $5,600 included a recovery for hospital and medical expenses incurred on behalf of his wife, Kathleen Gordon, and his claim for loss of her society and consortium, which items had not been apportioned in the jury's verdict, no recovery could be had against the Maryland Casualty Company for any part of that judgment. At the trial Lowell Gordon testified that the total amount of his medical and hospital expenses was $509.25 for himself, and $1,547.30 for Mrs. Gordon, making a total of $2,056.75. Also, over the objection of the Maryland Casualty Company a transcript of the testimony in the former trials was admitted in evidence. The trial judge entered a judgment in favor of plaintiffs in the Lowell Gordon suit for $3,500, only, and in the Kathleen Gordon suit and the James Stuffel, Jr. suit for the full amount of the judgments there involved, viz., $4,500 in the Kathleen Gordon suit and $2,000 in the James Stuffel, Jr. suit. After a motion for a new trial had been overruled, appeals in error were perfected by the Maryland Casualty Company from the judgments against it. In this Court, it has filed two assignments of error, which present the questions of whether the Maryland Casualty Company is liable for any part of the Lowell Gordon Judgment because of lack of coverage of its insurance policy.

We will take up and dispose first of the second assignment of error, because it covers and is applicable to all three of the cases.

The second assignment of error denies liability on two grounds: (1) That Paul Southerland had no insurable interest in the automobile covered by the policy involved in this cause, and (2) That material misrepre-

sentations were made in the application for the policy. We think neither of these grounds entitle the Maryland Casualty Company to be relieved of liability in these cases.

■ The contention that Paul Southerland had no insurable interest in the automobile is based on the fact that the automobile in question belonged to his stepson, a minor. The case of Cherokee Founderies, Inc. v. Imperial Assurance Co., 188 Tenn. 349, 219 S. W. (2d) 203, 9 A.L.R.(2d) 177, is cited as authority for the proposition that one who has no interest in the property insured cannot recover. In that case, a fire insurance policy on property being purchased was applied for, but no policy had been issued. The property in question was destroyed by fire before the title to it passed. The court, under those circumstances, correctly held that the prospective purchaser was not entitled to have the policy issued and recover thereon. In the instant case, on the other hand, Paul Southerland took title to the automobile which was being purchased by his stepson, because the transaction could not otherwise be handled for financing, because the stepson was a minor of the age of 20 years. Furthermore, all material facts were known to the Maryland Casualty Company before it issued its policy, same being set out in the application. Under these circumstances, as was held in Industrial Life & Health Insurance Co. v. Trinkle, 185 Tenn. 434, 206 S.W.(2d) 414, there being no collusion between the agent and the insured, and the facts which affected the coverage being known to the agent, such knowledge was imputed to the company. Other Tennessee cases to the same effect are Accident & Cas. Ins. Co. v. Lasater, 32 Tenn.App. 161, 222 S.W. (2d) 202; Maryland Cas. Co. v. McTyier, 150 Tenn. 691,

266 S.W. 767, 48 A.L.R. 1168; T. H. Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.(2d) 7; Zarzour v. Southern Life Ins. Co., 46 Tenn.App. 680, 333 S.W.(2d) 14. In Zarzour v. Southern Life Ins. Co., Presiding Judge McAmis, speaking for this Court, Eastern Section, said:

"The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration." Zarzour v. Southern Life Ins. Co., 46 Tenn.App. 684, 333 S.W.(2d) 16.

From Volume 5A, Am.Jur.—Automobile Insurance—Section 12, p. 15, we quote as follows:

"As regards the insurable interest required for automobile liability insurance, such interest is to be found in the interest that the insured has in the safety of those persons who may maintain, or the freedom from damage of property which may become the basis of, suits against him in case of their injury or destruction. The right to recover does not depend upon the insured's being the holder in fact, of either a legal or equitable title in the automobile, but upon whether he is primarily charged at law or in equity with the liability against which

the insurance was taken out. A liability policy issued to one in whose name title to a truck stood is not invalid for want of insurable interest, though another was the real owner. Moreover, an 'omnibus' coverage clause in an automobile liability policy covers a group of persons who may or may not have an insurable interest at the time the policy is written, if a person is within the defined group, it is sufficient that at the time of the accident such person is in a position to become legally liable for injury to others. It is to be observed, though, that if the misrepresentation is material to the risk, that the insurance is avoided—not because there is no insurable interest, but because of the misrepresentation.''

In the instant case, the legal title to the automobile insured stood in Paul Southerland, though the entire equitable interest therein belonged to his stepson, Homer K. Lovin.

But is is insisted, on behalf of the Maryland Casualty Company that in the instant case Paul Southerland did misrepresent the facts, in that he stated that his stepson would operate the vehicle insured approximately sixty-five per cent of the time, without disclosing that the stepson in question was the actual owner, so that the registered owner would have no right to control the use of the automobile by his stepson. The case of Didlake v. Standard Ins. Co., 195 F.(2d) 247, 33 A.L.R. (2d) 941, and the case of Employers Liability Assur. Corp. v. Maguire, 65 Pa.Dist & Co. R. 231, are cited in support of this contention. In Didlake v. Standard Ins. Co., the court reached its conclusion by reasoning: (1)

That insurors are entitled to assume that the major use of the insured car will be by the named insured, and (2) That the age and driving habits of the owner and named insured and whether he possesses normal mental and physical faculties are facts which should be, and are, considered by an insurance company in determining whether it will assume risk to be covered in the policy. Aside from the fact that the cases cited are not Tennessee cases, we think the facts of the instant case are easily distinguished. In the instant case, the insurance company had notice that the named insured had no driver's license and would not drive the automobile at all. The fact that the minor stepson was paying for the car we consider relatively unimportant. The representation that Homer K. Lovin would drive the automobile in question sixty-five percent of the time was not a misrepresentation, even if he drove same 100 per cent of the time; and, there is no showing in these cases that some other person or persons, with the consent of Homer K. Lovin, did not drive his automobile as much as thirty-five per cent of the time.

There is a further reason why the Maryland Casualty Company should be held liable under its policy in the instant case. It accepted notice of the accident of October 8, 1961, in which Lowell Gordon, Kathleen Gordon, and James Stuffel, Jr., were injured, investigated it, and defended the lawsuits brought as a result of same, without any reservation of rights against either the named insured, Paul Southerland, or Homer K. Lovin who was also insured under the omnibus clause of the policy. We think the insurance company under these circumstances should be estopped to deny cover-

age after the insured have been cast in the suit so defended.

From 29A Am.Jur.—Insurance—Sec. 491, pages 600, 601, we quote as follows:

"There is a conflict of authority as to whether the fact that the liability or indemnity defends the insured in an action not within the coverage of the policy constitutes an estoppel, a waiver, or an admission or assumption of liability as to the injured person so that the insuror thereby becomes bound to pay the injured person the amount of the judgment recovered against the insured, up to the limit of liability under the policy, without regard to whether such conduct would give the insured a right of action against the insuror in case the latter did not pay the judgment or reimburse the insured if he paid the judgment. The majority of the courts which have passed on this question hold that the insuror by such conduct renders itself liable to the injured person if it has not seasonably preserved its rights under a notice or agreement."

On the same subject, 29A Am.Jur.—Insurance—Sec. 1465, p. 577, says:

"The general rule supported by the great weight of authority is that if a liability insuror, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of for-

feiture or noncoverage. In other words, the insuror's unconditional defense of an action brought against its insured, constitutes a waiver of the terms of the policy and an estoppel of the insured to assert such grounds.''

■ Counsel for the Maryland Casualty Company undertake to make a further objection that since Paul Southerland, the named insured, did not give his consent to the use of his name as plaintiff in the actions here involved, the other plaintiffs should be held to be without standing in these causes of action. We think this contention is without merit. It is true Paul Southerland testified that he had not given permission for the use of his name as plaintiff. He did not, however, make any objection to his name having been so used. We think this should be held to constitute a ratification by him, and eliminate this objection on the part of the Maryland Casualty Company.

Appellant's second assignment of error will be overruled, with the result that the judgment for $4,500 in favor of Kathleen Gordon, Homer K. Lovin, and Paul Southerland, and the judgment for $2,000 in favor of James Stuffel, Jr., will be affirmed.

■ We take up now the first assignment of error, which applies only to the Lowell H. Gordon judgment for $3,500. This assignment presents a more serious question. Plaintiff in error, the Maryland Casualty Company, contends by this assignment of error that it cannot be held liable for any part of the judgment of $5,600 in favor of Lowell Gordon. Its contention is that ''Where a wife is awarded judgment of $4,500 against an insured whose policy has limits of 5/10/5, and where a husband

brings an action based on the same accident for his own injuries, property damage, plus his wife's medical bills, and for loss of consortium, and is awarded a judgment of $5,600 (later reduced to $3,500 as regards insuror), which does not show allocation of the elements making up the judgment, neither judgment creditors of insured nor insured himself can, in a subsequent suit, compel the insuror to pay the husband's judgment, because there is no evidence to show how much of the husband's judgment is for his own losses, and how much is for his wife's medical bills and loss of consortium; and, accordingly, that it is not shown whether or not the insurance company would be required to pay more than the limit of $5,000 for injury to any one person.

In support of this proposition, counsel for plaintiff in error cite Yancey v. Utilities Insurance Co., 23 Tenn. App. 663, 137 S. W. (2d) 318, and Morris v. Western States Mutual Auto Ins. Co., 268 F. (2d) 790 (7th Cir. 1959). The case of Morris v. Western States Mutual Auto Ins. Co., involved an application in the Federal Court of Tennessee law, based on the decision in Yancey v. Utilities Ins. Co. The Yancey case involved facts very closely analogous to those involved in the instant case. In that case, Yancey had a 5/10/5 policy and was sued by William A. Bowden and Sybil Bowden, his wife. Sybil Bowden got a judgment of $7,500, of which the insurance company paid $5,000. William A. Bowden, suing for his own injuries, plus his wife's medical bills and loss of her services, recovered a judgment of $2,500, which judgment did not, however, indicate the elements which constituted same. The insurance company, as stated, paid $5,000 of Mrs. Bowden's judgment, but refused to pay any part of Mr. Bowden's $2,500 judgment.

In that case, Yancey undertook to introduce in evidence the bill of exceptions, containing the testimony of William A. Bowden, for the purpose of showing the amount of expenses incurred by him in the way of doctor's bill, hospital expense, loss of services, etc., sued for in the second count of the declaration, but the Chancellor in the Yancey case against the insurance company, sustained an objection and excluded this evidence. From the opinion of the Court of Appeals, by Senter, J., we quote as follows:

"Regardless of whether this evidence was competent, it does show an effort upon the part of the defendant, Insurance Company, to have the record afford some evidence on the question of how much of the jury verdict of $2,500 was intended to cover the matters sued for in the second count of the declaration, so as to afford some basis for arriving at the proper amount of the jury verdict for which the defendant would be liable in the William A. Bowden case. This effort was resisted by the solicitor for complainant. We think that it is clear from the record that complainant did not want any evidence in the record that would afford a basis for apportioning the jury verdict between the first and second counts of the declaration in the William A. Bowden suit.

"We are further of the opinion that the $5,000 paid by the defendant insurance company on the judgment obtained by Mrs. Sybil N. Bowden was the full limit of its liability on account of any injuries sustained by her and recovered by her in her suit, including all consequential damages resulting therefrom. This was the full amount of the coverage of

the policy as to the injuries and all consequential damages resulting therefrom, sustained by Mrs. Sybil N. Bowden, under the specific and unambiguous provisions of the policy contract as hereinbefore quoted and referred to on that subject.

"We are further of the opinion that the burden of proof was upon the complainant to show by proof, if it could, how much, if any, of the jury verdict and the judgment thereon was for the personal injuries sustained by him, since the liability of the insuror as to William A. Bowden would be limited to the amount allowed for the personal injuries sustained by him, and any consequential damages resulting from his injuries, but not for consequential damages, including the items contained in the second count as to his wife, resulting from the injuries sustained by her, since these items could only be recovered under the coverage of the policy in the verdict for the wife.

"In this view of the case, we are of the opinion that the complainant having failed to show by proof the amount of the judgment in favor of William A. Bowden that would be within the coverage as to him, there can be no recovery in the present suit against the defendant, Utilities Insurance Company. Any recovery would necessarily have to be the result of conjecture, speculation, or guess, and this is certainly not permissible under the settled rule against speculative judgments.

"We are therefore constrained to hold that the learned Chancellor was in error in decreeing a judgment in favor of complainant under the facts as shown by the record in this case.

"It results that the decree of the chancellor is reversed and the suit dismissed." Yancey v. Utilities Insurance Co., 23 Tenn. App. 675-676, 137 S. W. (2d) 326.

In the case at bar, Lowell Gordon, as plaintiff, showed by his own testimony, and by the transcript of the record in the former trial, that a total of $509.25 had been paid by him for hospital and medical expenses for himself, and $1,547.30 of similar expenses for his wife, Mrs. Kathleen Gordon, making a total of $2,056.45. This amount might be treated as the maximum amount of hospital and medical expenses which could have been included in the jury's verdict of $5,600. When this amount is subtracted from $5,600, it leaves $3,543.55. The trial judge, considering that evidence, reduced the Maryland Casualty Company's liability on account of that judgment to $3,500, which is $43.55 less than the net amount remaining after deducting all hospital and medical expenses from the $5,600 judgment. In the case at bar this testimony was admitted in evidence, whereas in the Yancey case it was excluded. Assuming that it was properly admitted in evidence, we would be disposed to hold that, with this reduction in the amount of the Lowell Gordon judgment, the Maryland Casualty Company had received all consideration to which it could be entitled, except for the fact that the Lowell Gordon suit sought also a recovery for loss of consortium of his wife, Mrs. Kathleen Gordon. Unless we are to consider the additional deduction of $43.55, plus the difference of $500 between the $4,500 verdict in favor of Mrs. Gordon and the $5,000 limit of the policy as to her, as covering any amount which the jury might have returned for loss of consortium, no reduction was made on account of that

item in Lowell Gordon's recovery against Homer K. Lovin. We are, therefore, left in the position of having to speculate as to what, if any, amount was included in the jury's verdict for loss of consortium, and as is stated in the above quoted portion of this Court's opinion in Yancey v. Utilities Ins. Co., neither this Court, the lower court, nor the jury trying the suit of Lowell Gordon against Homer K. Lovin, could be permitted to do. With the burden on the plaintiffs to show that the Maryland Casualty Company is not being required to pay more than $5,000 for injuries to any one person, we can not say that they have carried this burden in the instant case.

We, therefore, feel constrained to hold, on authority of Yancey v. Utilities Insurance Co., 23 Tenn. App. 663, 137 S. W. (2d) 318, that plaintiff in error's first assignment of error, which is applicable exclusively to the case of Maryland Casualty Company v. Lowell Gordon, Homer K. Lovin, and Paul Southerland, is well taken, and must be sustained.

The net result is that the judgment of the Circuit Court of Hamblen County in the case of Maryland Casualty Company, Plaintiff in Error, v. Lowell Gordon, Homer K. Lovin and Paul Southerland, Defendants in Error, will be reversed, and that case dismissed; and that the judgments of the Circuit Court of Hamblen County in the cases of Maryland Casualty, Plaintiff in Error v. Kathleen Gordon, b/n/f Homer K. Lovin and Paul Southerland, Defendants in Error, and Maryland Casualty Company, Plaintiff in Error v. James Stuffel, Jr., Defendant in Error, will be affirmed. Judgment will be entered in this court in favor of Kathleen Gordon b/n/f, Homer K. Lovin and Paul Southerland against the Mary-

land Casualty Company for $4,500, together with interest thereon from the date of overruling of the motion for a new trial in that case, and in favor of James Stuffel, Jr. for $2,000, with interest from the date of overruling of the motion for a new trial in that case. The judgment of the lower court denying recovery of the 25% penalty will be affirmed.

The costs of the cause will be adjudged three-fourths against Maryland Casualty Company and its surety on the appeal bond, and one-fourth against the appellee, Lowell Gordon.

Avery, (P. J., W. S.), concurs in part.

Carney, J., concurs.

AVERY, (P.J., W.S.), (concurring in part).

This is a consolidated record of three separate lawsuits. In my opinion the first thing for us to notice is by whom these suits were brought and against whom they were brought. Without looking to the style of these cases as shown on the outside or front sheet of the briefs I think we should look to the way and manner that these cases are shown in the compilation of the record. So as shown below the styles are in that order.

At page two is shown the declaration of the suit by Kathleen Gordon, who though a minor, was married to Lowell Gordon. That suit was brought in the name of Kathleen Gordon, by next friend Lowell Gordon, (she was plaintiff in the original tort action). Also by her co-plaintiffs Homer K. Lovin and Paul Southerland, the assureds under the policy issued by defendant, who joined with her in this suit against the Maryland Casu-

alty Company, the carrier of the insurance for the defendants Homer K. Lovin and Paul Southerland, the defendants in the original tort action. This right of action is based upon the contractual provision as set out in the policy contract relating to obtain judgments. The judgment in this case is as follows:

"It is, therefore, considered by the Court that plaintiffs, Kathleen Gordon, Homer K. Lovin and Paul Southerland, have and recover of the defendant, Maryland Casualty Company, the sum of $4,500.00, with interest at the rate of six percent (6%) per annum beginning March 13, 1962, together with the costs of the suit, for the collection of all of which execution may issue. * * *

"The payment of this judgment by the defendant Maryland Casualty Company, shall constitute payment of the judgment in the amount of $4,500.00 recovered by Kathleen Gordon against Homer K. Lovin in an action in this Court styled Kathleen Gordon b/n/f Lowell H. Gordon versus Homer K. Lovin and Paul Southerland, Rule Docket Number _____ * * *."

The declaration in the instant case avers that after the trial in the tort action, brought against Paul Southerland and Homer K. Lovin by Mrs. Kathleen Gordon in the Circuit Court of Hamblen County, Tennessee:

"* * * and after trial on February 21, 1962, a judgment was entered in favor of Kathleen Gordon, and against Homer K. Lovin, the additional insured under this policy of insurance, in the amount of $4,500.00 (Four Thousand Five Hundred Dollars) * * *."

The second case, as compiled in the transcript, is styled "Lowell H. Gordon (who was the plaintiff in the tort action) Paul Southerland and Homer K. Lovin versus Maryland Casualty Company. So it is seen that Paul Southerland and Homer K. Lovin appearing with Lowell H. Gordon as plaintiffs in the instant case, were defendants in the tort action filed by Lowell H. Gordon. This declaration alleges:

"* * * after trial on February 21, 1962, a judgment was entered in favor of Lowell H. Gordon and against Homer K. Lovin, the additional insured under this policy of insurance in the amount of $5,-600.00 (Five Thousand Six Hundred Dollars), which includes $683.00 (Six Hundred Eighty Three Dollars) property damage. * * *"

The bill of exceptions shows that judgment in the tort action by Lowell Gordon against Paul Southerland and Homer K. Lovin was:

"In the case of Lowell Gordon vs. Homer K. Lovin in favor of Lowell Gordon, did assess and fix the damage of Lowell Gordon at $5,600.00 (Five Thousand Six Hundred Dollars) * * *"

"That Lowell Gordon have and receive of Homer K. Lovin the sum of $5,600.00 (Five Thousand Six Hundred Dollars), as damages."

The judgment in the case now under consideration is shown above. In these two cases, insofar as the record before us is concerned, Paul Southerland is not involved.

It should be said that counsel for the two Gordons in the case now before us are James K. Miller, Noe and Reed.

In the case of James Stuffel, Jr. versus Maryland Casualty Company, the judgment in his favor in the tort action was for his simple injury, and in the contract action now under consideration neither Lovin nor Southerland joined, so that he recovered only in his own name the amount of the judgment that he had recovered in the tort case. He was represented by different counsel from the ones who were representing Mr. and Mrs. Gordon in the tort action, and his attorney in the instant case under contract is Mr. Clay Walker, his same counsel as in the tort case.

It is said in the majority opinion with respect to all three of the cases that:

"[N]o judgment was recovered against Paul Southerland. The suit of James Stuffel, Jr. had not named him as a defendant, and in the suits of Lowell Gordon and Kathleen Gordon, nonsuits had been taken."

At page 46 of the bill of exceptions appears the following order:

"Upon motion of the plaintiffs their suits against Paul Southerland are dismissed."

And this order relates, as shown by the style of the cases, to the suits of the two Gordons only.

Another small discrepancy appearing in the majority opinion, if my search of the record is correct, relates to a statement:

"At the trial Lowell Gordon testified that the total amount of his medical and hospital expenses was $509.25 for himself, and $1,547.30 for Mrs. Gordon, making a total of $2,056.75."

As I read the record, if I understand what is testified to by Mr. Gordon, the record reveals the fact that Mr. Gordon was out $1431.50 expense incident to the injury of his wife, and the $1547.30 is his expense incident to his own injury, including $665.00 damage to his automobile. Explanation of which is hereinafter set out.

The policy involved contains provisions applicable to the case now before us as follows:

"3. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| "Coverages | Manual class | Premiums |
|---|---|---|
| "A Bodily injury Liability | 2A | |
| 5,000 each person $10,000 each accident | | $73.50 |
| "C-1 Basic Medical Payments— | | |
| | $ nil each person | |
| C-2 Extended Medical Payments | | |
| | $ nil each person | |
| B Property Damage Liability | | |
| $5,000 each accident | | $43.50 |
| E—Collision or Upset, | | |
| Actual cash value less——deductible." | | |

"1—Coverage A—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"Coverage B—Property Damage Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"III Definition of Insured:

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either * *"

"7—Action Against Company, Coverages A and B—

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance

afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

The transcript of the Circuit Court of Hamblen County in the original case of Lowell Hubert Gordon v. Homer K. Lovin and Paul Southerland, including the testimony of Lowell Gordon in that case was filed in this case. Not only does it show the expense incurred by Lowell Gordon for the hospital treatment of his wife for her injury, but it shows the amount of his property damage and the expense incident to his own injury, and he testified to the same items in the instant case, as follows:

Expense of hospital and doctors' bills incident to the injury of Mrs. Gordon paid by Mr. Gordon:

| | |
|---|---|
| Dr. Carlson | $ 727.25 |
| Dr. Nabors | 195.00 |
| Morristown Hamblen Hospital service | 389.25 |
| 12 trips to Knoxville & return incident to injury to Mrs. Gordon @ $10.00 per trip | 120.00 |
| | $1431.50 |

Doctor's bill, hospital bill and expenses incident to injury of Mr. Gordon:

| | |
|---|---|
| Dr. Nabors | $ 111.00 |
| Morristown-Hamblen Hospital for Mr. Gordon | 95.30 |
| Loss of time from work by Mr. Gordon at $65.00 per week | 676.00 |

Total incident to Lowell Gordon's injury...$ 882.30

Damage to automobile of Lowell
Gordon $795.00
Less salvage — 130.00 665.00

Total property damage, doctors, hospital
and lost wages.........................$1547.30

This insurance contract further provides as follows:

"Limits of Liability Coverage A:

The limits of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person as the result of any one accident; the limit of such liability stated in the declarations as applicable to 'each accident' is, subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons as the result of any one accident."

His recovery incident to Mrs. Gordon's injury can not exceed $500.00, which together with the $4500.00 for her personal injury would make the full amount under the contract for one injury $5,000, as defined under "1— Coverage A—Bodily Injury Liability" as quoted on page four of this opinion.

We have said so many times that a fact may be arrived at from direct evidence, circumstantial evidence inci-

dent to any transaction or a combination of both, and when such fact is arrived at then inferences may be drawn from that proven fact which substantiates the rights of the parties. Prosser on Torts—1941—page 291, Everett v. Evans, 30 Tenn. App. 450, 207 S. W. (2d) 350, Ross v. Griggs, 41 Tenn. App. 491, 498, 296 S. W. (2d) 641.

Since there was a verdict and judgment in favor of Mr. Gordon in his tort action against Lovin of $5600.00, and with the facts proven in that case showing expenses incident to Mrs. Gordon's injury and his injury are definitely set out in dollars and cents and are so testified to by him in the instant case, which amounts to less than the total judgment in favor of Mr. Gordon, certainly we can infer that said verdict, here the basis for their suit as to his recovery, included these items of uncontradicted expense, and are clearly a part of the coverage under the contract here involved in this particular suit against the Maryland Casualty Company, by the assured and his judgment creditor, Gordon.

Another circumstance to be considered is the fact that the attorneys for the insurance company, the defendant in this case, represented both the insurance company and the defendant Southerland and Lovin, and counsel testifies the only other representation they had in that trial was a lawyer who represented them relative only to the overage sued for, and therefore they had no representation except counsel for the insurance company, for that amount was embraced in the limits of liability set forth in the insurance contract. These particular counsel for the insurance company then representing Southerland and Lovin, made no effort in that original suit to

have the jury or the Court separate this $5600.00 verdict and judgment into items covered by this insurance contract, but simply were silent presumably knowing that a division of that verdict should have been made, and thereby defended this insurance company to the disadvantage of the assured. Now the company comes by same counsel to take advantage of the action of its own counsels' representation of Lovin and Southerland in the tort action.

It is not shown who paid Mr. Miller for his services in the former case wherein the judgments were obtained against Lovin, but here is what Mr. Dye, who represented Maryland Casualty Company then and now, said about Mr. Miller's representation in that first case, in contending that he had a right to show that Lovin and Southerland had separate counsel in that case.

(B of E. p. 18) "Your Honor please, the suits were for sums in excess of the policy limits, the parties were so informed and Mr. Miller was employed to represent them as to the overage. Now, that's how simple it is, I wanted that in the record. That's all."

We are not dealing here with a judgment creditor alone, we are dealing with a lawsuit in which Lovin and Southerland, the assured under the policy of insurance, —the contract which is the basis of his right in the instant case, have joined with Lowell Gordon seeking to recover what they, as an assured, are entitled to recover. Thus we have a situation where the judgment debtor is certainly entitled to have a joint recovery with Lowell Gordon, his judgment creditor, of that part of the verdict in favor of Gordon which is proven in this case to be covered by the insurance contract, and they are entitled

to recover the actual proven items which are covered by this insurance contract, which can be determined to make up part of the judgment against them. This is now a suit on a contract, not in tort, though the basis for this action in contract was involved with the tort action.

Just exactly why the Trial Judge included Paul Southerland in his judgments in the cases at bar does not appear to me for none of the judgments in the tort action were against him.

The policy clearly provides, as shown on page five of this opinion in the second paragraph following the figure ''7'', that after a judgment has been rendered, the party in whose behalf the judgment was rendered, also becomes a party to this contract and is entitled to bring a suit to recover thereunder in accord with the terms of the policy, so that in this suit where it is shown that Mr. Gordon paid out an amount of $1431.50 expense incident to his wife's injury, he is entitled to recover $500.00 of that amount, which would make a total of $5,000 growing out of her injury, she having recovered $4500.00 in her judgment for personal injury. He is also entitled to recover his proven doctor's bill of $111.00, growing out of his injuries; his hospital bill of $95.30 growing out of his injuries; his property damage of $665.00, the damage to his automobile, and the proven loss of wages to him of $676.00, making the above set out total of $1547.30. It should be said here that in the original opinion it is stated that ''$1547.30 of similar expenses for his wife, Kathleen Gordon'', is not a correct statement. That amount is his exact expense. So under the property damage liability he is entitled to the damage to his automobile as proven and so is the assured entitled to recover jointly

with him that amount in order to have it credited on the judgment which Mr. Lowell Gordon obtained against him.

When the plaintiff, Lowell Gordon, was on the witness stand testifying in this case and when he was being interrogated with respect to the items of his expense relative to himself and his wife and with respect to his property damage there was some objection made. After argument by counsel for the plaintiffs he said to the Court:

"We think, therefore, we are entitled under the ruling in this case (meaning Yancey v. Utilities Ins. Co. 23 Tenn. App. 663 [137 S. W. (2d) 318] to introduce this evidence.

"THE COURT: Was the record taken in that other case? (meaning the tort action against Lovin)

MR. NOE: Yes, Your Honor. This was written up at my request by Mr. Miller, it is the testimony of Mr. Lowell Gordon in the case before.

"THE COURT: Well, can't you agree to let it be filed into this record?

MR. DYE: (Counsel for defendant) Not for the purpose he is filing it for. And to say further, I want to further object here. Assuming that he does prove here the amount of damages he does prove * * * reprove here the amount of damages he allegedly proved on the trial before this, we still are in the field of conjecture as to whether or not the jury awarded any particular thing or if so how much.

"THE COURT: The Court is going to permit him * * * I think it is competent to show what he proved in the other trial that the damages were. Go ahead.

"MR. DYE: Reserve exception, Your Honor.

"THE COURT: Can't you file that as part of his testimony?

"MR. DYE: Yes, as far as that is concerned. I have no objections to that part of it.

"MR. NOE: Then there will be no further need for him to testify.

"THE COURT: Then let him file that into the record as his testimony as to the damages.

"MR. NOE: Will you file that as Exhibit #4 to your testimony?

"A—Yes, sir.

"THE COURT: Now, what were those damages?

"MR. NOE: Now, Your Honor please, these are the damages which he stated * * *."

Following that are the exact items that have been set out in this opinion and recapitulated as shown on pages five and six hereof.

An examination of the record, in the light of the facts set out in this opinion, clearly show that every item of proof relative to the $5600.00 judgment, as testimony is undisputed in both the trial of the tort action and in this action on the contract except that there is no item separating the amount of damage to Mr. Gordon for his personal injury and that of the loss of service of his

wife. So that if he is permitted to recover $500.00 of the expense incident to his wife's injury, so as to bring the total of her judgment for her injury and his expense in connection therewith up to the maximum for one injury of $5,000 under the insurance contract, thus the expense incident to his injury and his property damage for his automobile of $665.00, all of which are positively shown by the record, he would be entitled to recover and so would be assured on this contract, a total sum of $2047.30.

The case is here to be tried de novo, of course, with the statutory presumption unless the proof preponderates against the judgment of the Trial Court, the judgment would have to be sustained. T.C.A. sec. 27-303.

The majority opinion rests its conclusions that Lowell Gordon could not recover any amount whatever upon the case of Yancey v. Utilities Ins. Co., 23 Tenn. App. 663, 675, 676, 137 S. W. (2d) 318.

In my opinion there is a clear distinction between that case, and the facts and law in the case at bar. In the majority opinion there is a correct statement to the effect that in the case of Yancey v. Utilities Ins. Co., 23 Tenn. App. 675, 676, 137 S. W. (2d) 318 the insurance company requested the Court to be permitted to file into the record the proof of the respective items that went into the judgment for Mr. Bowden, the husband of Mrs. Bowden who had brought suit for about the same alleged category of damages as we find in the present case of Mr. Gordon. However, counsel for Mr. Yancey, who was proceeding upon the theory that he was entitled to recover the whole amount in that case because the injury of Mr. and Mrs. Bowden did not amount to more than the total contract

indemnity provision for all persons hurt in one collision. Thus the Court sustained that objection, and in the Yancey case an examination of the opinion show clearly that there was nothing before the Court of Appeals in that case by which they could ascertain the elements of damage, in dollars and cents, which went into the $2500.00 judgment sought by Mr. Yancey and which had resulted in the action against him by Mr. Bowden in the tort case below. Furthermore, in the case of Yancey v. Utilities Insurance Company, supra, no proof was made by the witness of these separate items. The following is what the Court said with respect to the introduction or attempted introduction of the several items, found on pages 675 and 676 of the Yancey opinion [23 Tenn. App. pages 675-676, 137 S. W. (2d) page 326]:

"The record shows that the attorneys representing the insurer sought to introduce the bill of exceptions, containing the testimony of William A. Bowden in his suit against Yancey, for the purpose of showing the amount of the expenses incurred by him in the way of doctor's bill, hospital expense, loss of services, etc., sued for in the second count of the declaration. The chancellor sustained an objection made by the solicitor for the complainant, and excluded this evidence. As above stated, the action of the court in so ruling is made the basis of one of the assignments of error by the defendant on this appeal, and numerous cases have been cited and relied upon by appellant in support of this assignment of error, including Washington Gaslight Co. v. District of Columbia, supra [161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712]; Russell v. Place, supra [94 U.S. 606, 24 L.Ed. 214] Cromwell v. Sac County, supra [94;

U.S. 351, 24 L.Ed. 195]; Littleton v. Richardson, supra [34 N. H. 179].

"Regardless of whether this evidence was competent, it does show an effort upon the part of the defendant, Insurance Company, to have the record afford some evidence on the question of how much of the jury verdict of $2,500 was intended to cover the matters sued for in the second count of the declaration, so as to afford some basis for arriving at the proper amount of the jury verdict for which the defendant would be liable in the William A. Bowden case. This effort was resisted by the solicitor for complainant. We think that it is clear from the record that complainant did not want any evidence in the record that would afford a basis for apportioning the jury verdict between the first and second counts of the declaration in the William A. Bowden suit."

There is another very clear distinction in the two cases. In the tort action by Mrs. Bowden against Yancey, Mrs. Bowden recovered a verdict and judgment of $7,500. This was $2,500 more than the $5,000 maximum for one injury, whereas in the present case Mrs. Gordon recovered only $4500.00, which was $500.00 less than the maximum for one injury, and this is what the Court said with respect to Mr. Bowden proving the expense incident to his injury:

"We are further of the opinion that the $5,000 paid by the defendant insurance company on the judgment obtained by Mrs. Sybil N. Bowden was the full limit of its liability on account of any injuries sustained by her and recovered by her in her suit, including

all consequential damages resulting therefrom, this was the full amount of the coverage of the policy as to the injuries and all consequential damages resulting therefrom sustained by Mrs. Sybil N. Bowden, under the specific and unambiguous provisions of the policy contract as hereinbefore quoted and referred to on that subject."

We think also there is a further distinction between the two cases. On page 676 of Yancey v. Utilities Ins. Co., 23 Tenn. App. under item "3" the Court said [23 Tenn. App. page 676, 137 S. W. (2d) page 326]:

"We are further of the opinion that the burden of proof was upon the complainant to show by proof, if he could, how much, if any of the jury verdict and the judgment thereon was for the personal injuries sustained by him, since the liability of the insurer as to William A. Bowden would be limited to the amount allowed for the personal injuries sustained by him, and any consequential damages resulting from his injuries, but not for consequential damages, including the items contained in the second count as to his wife, resulting from the injuries sustained by her, since these items could only be recovered under the coverage of the policy in the verdict for the wife."

Thus it is clear beyond any question in my mind that had the proof been made in that case tried by Yancey against the insurance company the Court would have held that it could, on a hearing of the case de novo, have separated these items that had been specifically proven from the total judgment and to which the assured was entitled to recover.

We think we are fortified in our position with respect to that item by the language of the Court under item "4-5" found on said page 676 wherein the Court further said [23 Tenn. App. page 676, 137 S. W. (2d) page 326]:

"In this view of the case, we are of the opinion that the complainant having failed to show by proof the amount of the judgment in favor of William A. Bowden that would be within the coverage as to him, there can be no recovery in the present suit against the defendant, Utilities Insurance Company. Any recovery would necessarily have to be the result of conjecture, speculation, or guess, and this is certainly not permissible under the settled rule against speculative judgments."

Another incident occurred in the trial of the case now being reviewed when Mrs. Patty was on the stand testifying in behalf of the plaintiffs. When Mr. Noe, counsel for plaintiffs, had finished with her examination, Mr. Dye, counsel for defendant, announced "no questions". At that point as shown by the bill of exceptions, Mr. Noe said to the Court:

"Now, Your Honor please, Mr. Dye and I have agree that we would submit the record of the pleadings of these former trials, and allow the Court Reporter to check them out and see if they are accurate * * *

"MR. DYE: Wait just a minute, I didn't think we meant to do that.

"MR. NOE: I thought we had already agreed to that.

"MR. DYE: I don't object to it.

"THE COURT: Well, get the clerk in here, or stipulate it, or whatever you are going to do.

"MR. NOE: I thought we had already agreed to stipulate it, if Your Honor please.

"MR. DYE: I have here what I believe to be a complete copy of the technical records in the 3 suits arising out of the motor vehicle accident. And we agree that they may be submitted as Exhibit 3, subject to having Mr. Miller check to be sure they are all here and to the conformity.

"THE COURT: Well, the Court is not going to let somebody else check them to see if they are all there. Are they all there, Mr. Noe?

"MR. NOE: Yes, Your Honor.

"THE COURT: Well, go ahead."

Thus it is revealed that counsel for the insurance company had in his possession this technical transcript of the tort action, and that is filed in this case as an exhibit, all of which he agreed to do. Apparently this exhibit begins on page 32 and ends on page 63 just before the introduction of the testimony that Lowell Gordon gave in the tort case, which is filed as Exhibit 4, beginning on page 64.

Furthermore we have shown in this opinion that these items of damages were specifically set out by Mr. Gordon in his testimony in the tort action. Which Exhibit 4, if competent, shows that there was no objection to statement of these particular items of expense incurred by Mr. Gordon, but on the contrary there was an admission that the items were correct by Mr. Dye, then repre-

senting Mr. Lovin. In this Exhibit 4, beginning on page 75 of the bill of exceptions in the case now before us, counsel for the original plaintiff Gordon asked him the question set out below which resulted in the admission of counsel for Lovin who was afforded him by the Insurance Company as follows:

"Q—Now, Lowell, I'm going to hand you some bills for you to identify. Lowell, will you identify that?

"MR. DYE: Your Honor, please, why doesn't Counsel just go ahead and state what they are and get it over with?

"THE COURT: All right, no objection to them, is there?

"MR. DYE: No.

"MR. NOE: All right."

And he then set out the exact items of expense as shown by this record in the case under consideration.

Mr. Dye is the same counsel representing the insurance company in the case being here reviewed.

In the case of Audrey Morris, Executrix etc. of the last will of the former Mrs. Virginia Day v. Western States Mutual Automobile Insurance Company in the United States Court of Appeals, 7th Cir., 268 F (2d) 790, which is another case dealing with the holding in the Tennessee Court of Yancey v. Utilities Ins. Co., supra, as authority for the opinion of the Federal Court, it is obvious there is a considerable difference in the case in which we are here reviewing, and what the Federal Court understood the Yancey case to hold. In that case the widow, Virginia Day, and her husband were

both injured in an automobile accident near White Bluff, Tennessee. The husband was killed. She sued the insured for damage on account of her husband's death, for her injury, for the value of her car, expense etc. and a general verdict for $70,000 was returned by jury and judgment entered accordingly. Mrs. Day then died and her executrix, Mrs. Morris, brought suit against insurance company. There was no proof of damages for separate items nor any whatever allocation for her injury, the death of her husband, for her property damage nor for her loss of her husband's services. The Insurance Company paid $15,000 into the Court on the $70,000 judgment and refused to pay the additional $55,000 on the judgment. The insurance contract was only $15,000 for each person injured or a total of $30,000 for all injured in any one accident with property damage not to exceed $5,000. Counsel for the Western Insurance Company who had represented the assured Morris in the tort action by Mrs. Day, said to the Court:

"If the jury should find in favor of the plaintiff, shouldn't they allocate so much for the death case and so much for the personal injuries of the plaintiff?"

To that inquiry counsel for Mrs. Day, the plaintiff in the tort action, said:

"We would not object as to a finding as to the property damage, but we think that her personal injuries and loss of services both should be in one judgment. There is no diversity of interest as far as the defendant is concerned, so there would be no question about allocation as between parties."

When that statement was.made the Court inquired of counsel who represented the defendant in that tort action, as provided in the insurance policy: "Do you wish to be heard on the question?" Whereupon, the counsel replied: "No, Your Honor," and the Court continued to instruct the jury, saying to the jury:

"Inasmuch as all the damages are sued for in one complaint, including the personal injuries, loss of her husband, and the damage to the personal property, I think that one verdict would cover all three claims. I hand you the blank forms of verdict, Ladies and Gentlemen of the Jury. You may now retire and consider your verdict."

Now when the executrix for the deceased judgment creditor brought the suit against the insurance carrier, Western States Mutual Automobile Insurance Company, and obtained a judgment in the District Court when the case reached the United States Court of Appeals, no proof was offered of items entering into judgment obtained in District Court and in reversing the judgment of the lower Court, the Circuit Court of Appeals said:

"Plaintiff argues that the Yancey case is distinguished from that before us because the suit was brought by Yancey the insured, not, as here, by the executrix of the injured party; that two separate persons sought and secured judgments, unlike this case where Mrs. Day alone secured a judgment; and that the counsel for the insurer in the Yancey case tendered a detailed special request, which was denied, for allocation of damages on the two counts. We cannot agree. The Yancey case appears to us to be very much in point. The Court there held that

one who suggests separate verdicts cannot be estopped to claim that a single verdict for one lacks proof of damages to two persons. The record before us *discloses such suggestion was made by counsel for Western and opposed by counsel for Mrs. Day."* (Emphasis added)

Before the United States Circuit Court of Appeals, however, concluded its opinion, it stated expressly what we insist the law to be here as follows:

"Where the judgment includes elements for which the insuror is liable and elements outside the range of coverage, apportionment of damages to the respective causes of action is a burden on the party seeking to recover from the insurer. General Accident Fire & Life Assur. Corp. v. Clark, 9 Cir., 1929, 34 F. (2d) 833."

Thus it is shown that the United States Circuit Court of Appeals was of the opinion that the burden of showing that the damages as insured against covered by the insurance contract was upon the plaintiff in the suit against THE INSURER, all of which it is admitted by the writer of this opinion, is true, and applying that principle to the instant case under consideration, certainly the burden has been carried showing damages for specific items included in the insurance contract are in at least $2047.30, embraced in the lower Court's judgment of $5600.00.

We must further consider the fact that the trial Judge, the Honorable John R. Told, in the tort action and who as the 13th juror, approved the verdict of $5600.00, is the same Judge, who in the action against the Insurance Company in the case now under consideration, has fixed

the amount embraced in the $5600.00 judgment at $3500.00.

Again it is noted that the majority opinion agrees that the only combination of damages sought by Mr. Gordon, which was not proven separately, is that of his personal injury plus damage for alleged consortium. Commenting upon the fact of this combination of the damages included in the $5600.00 verdict for Mr. Gordon's personal injuries and for the loss of his wife's services embraced within this term "consortium", the majority opinion said:

"We are, therefore, left in the position of having to speculate as to what, if any, amount was included in the jury's verdict for loss of consortium."

Then in somewhat of a recognition of the construction put upon the Yancey case by the United States Circuit Court of Appeals in the Morris case, supra, the majority opinion ends:

"With the burden on the plaintiff to show that the Maryland Casualty Company is not being required to pay more than $5,000 for injuries to any one person, we can not say that they have carried this burden in the instant case."

And upon that conclusion dismissed this case of the plaintiff Lowell Gordon, against defendant Maryland Casualty Company. Certainly this record clearly indicates that the burden was carried by Mr. Gordon showing the elements up to the amount hereinbefore stated. For each item separately proven making up the $2047.30, and with these items specifically proven, together with the presumption that the judgment of the Trial Court is

correct, unless it is not supported by the preponderance of proof, we likely would be warranted in affirming his judgment.

I fully concur in the majority opinion with respect to the judgment recovered by Mrs. Kathleen Gordon and Homer Lovin and the judgment recovered by James Stuffel, Jr., I fully concur in the reasons stated in the majority opinion for overruling assignment of error No. 2 as to Mrs. Gordon, Mr. Gordon and Mr. Lovin, and overruling assignment of error No. 2 as to all of the plaintiffs in the cases before us, except as to Paul Southerland, and since there was no judgment in either of the tort actions against Paul Southerland, no judgment in either of the cases against the Company should have been rendered in his behalf.

I respectfully disagree with the majority opinion in sustaining assignment of error No. 1 as it relates to judgment obtained by Lowell Gordon and Homer Lovin, and more especially in dismissing this case, and insist that the Court below was correct in holding that the item had been separately proven that made up that judgment, if not to the extent of $3500.00, then at least to the extent of $2047.30. I would, therefore, hold that the plaintiff Lowell Gordon is entitled to recover in this action at least the aforesaid amount of $2047.30, and acting under authority this Court has in this case de novo, since it was tried before the lower court without a jury, would render judgment in that amount, overruling assignment of error No. 1 relating to him so as to bring the judgment in harmony with the amount stated, if not for amount of $3500.00 as fixed by the Trial Court.

Without commenting further, I think this is a very close case on the question of bad faith.