IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2001 Session

# DAVID MELVIN YORK and wife, MARILYN YORK v. VULCAN MATERIALS CO., v. TRANSCONTINENTAL INSURANCE COMPANY

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 95-CV-371, Division No. IV     Hon. W. Neil Thomas, III., Circuit Judge**

**FILED JULY 20, 2001**

**No. E2000-02528-COA-R3-CV**

Contractor sought recovery from subcontractor's insurance carrier for moneys paid to a third party who had sued contractor and subcontractor in tort. The Trial Court ordered recovery under the policy. Insurance Company appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Craig R. Allen and John M. Hull, Chattanooga, Tennessee, for Appellant.

Tom Williams and William H. Webb, Chattanooga, for Appellee.

## OPINION

In this action, Vulcan Materials Company ("Vulcan"), was awarded a judgment against Transcontinental Insurance Company ("Transcontinental") by the Trial Judge, under an insurance policy issued by Transcontinental to S.J.Thomas, Inc., ("Thomas"), and a guaranty agreement between Vulcan and its subcontractor Thomas.

This dispute resulted from a suit filed by David York and his wife against Vulcan and Thomas for a motor vehicle accident wherein York lost control of his car and struck a guard rail on

Cummings Highway, causing him severe bodily injury.

The State of Tennessee had contracted with Vulcan to make repairs to the Highway, including the removal and replacement of the guardrail, and Vulcan had employed Thomas as a subcontractor to replace the guardrails.

The subcontract between Vulcan and Thomas states in pertinent part:

Subcontractor does hereby agree to release, save and hold harmless Contractor, its agent, servants, and employees from liabilities for injuries or damages sustained or alleged by Subcontractor, its agents, subcontractors or employees, arising out of or resulting from the performance of this Subcontract, including but not limited to claims, demands, actions and causes of action, damages, expenses, compensation, bodily injury or property damage arising from any condition or activity on the premises, including job sites, of Contractor, or from any act or omission of Contractor, its agents, servants and employees (excepting only willful and wanton conduct of such agents, servants and employees).

Subcontractor shall defend, indemnify and save harmless Contractor, its agents, servants, and employees from and against all losses and all claims, demands, payments, suits, actions, recoveries and judgments, including attorneys' fees, of every nature and description, brought, recovered or arising out of any act or omission of Subcontractor, its agents, subcontractors or employees, or arising out of or resulting from the performance of this Subcontract, or arising out of the use, occupancy, or possession of the premises, including job sites, of Contractor by Subcontractor, its agents, subcontractors or employees.

The subcontract further provided that Thomas would purchase CGL insurance and Excess Liability Coverage of one million dollars, and Thomas would provide Vulcan with a certificate of insurance which contained a specific contractual endorsement covering the liability assumed by Thomas under the subcontract agreement.

The policy issued by Transcontinental to Thomas provides coverage for an "insured contract," which is defined as including "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

At the trial the Trial Judge issued an Opinion finding that Transcontinental conceded that it had a duty to defend Vulcan on the issue of vicarious liability, that Vulcan was not negligent in the removal or replacement of the guard rails, and that the dangerous condition of the guard rails was brought about by Thomas' action.

The Court also found that Thomas had ceased doing business and had no assets, and that Vulcan settled with the Yorks for $375,000.00 and Transcontinental settled with the Yorks for $725,000.00.

The Trial Court found that Transcontinental was liable to Vulcan and was required to pay $275,000.00 of Vulcan's settlement, plus court costs, which represented the remainder of the policy limits remaining under Transcontinental's policy with Thomas. The Court denied Vulcan its attorney's fees on the grounds that they would have been incurred in any event, but awarded Vulcan pre-judgment interest on the $275,000.00.

On appeal, Transcontinental argues it had no duty to defend Vulcan, that Vulcan was estopped from recovering incurred defense expenses, and the Judgment was in error, as well as the allowance of pre-judgment interest.

Our standard of review is *de novo* with a presumption of correctness of the trial judge's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

The subcontract between Vulcan and Thomas required Thomas to indemnify Vulcan against any negligence of Thomas. The insurance policy which Thomas had with Transcontinental provided that Transcontinental would pay damages which Thomas had to pay as a result of assuming such liability in an "insured contract." The policy further defines an "insured contract" as including "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Thus, the subcontract agreement between Thomas and Vulcan was an "insured contract" pursuant to the terms of the policy.

When Transcontinental refused to defend Vulcan, it did so on the basis there were independent allegations of negligence made against Vulcan. However, Transcontinental had a duty to defend Vulcan. If any allegations in the complaint are covered by the insurance policy, the insurance company has a duty to defend. *Drexel Chemical Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. Ct. App. 1996). As this Court has held:

> The duty to defend is broader than the duty to indemnify. This court must review the allegations of the complaint and determine whether any of them are covered under the policy. If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy.

*Id.* at 480. Thus, the insurance company cannot refuse to defend unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within

the policy's coverage." *Id.; see also St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831 (Tenn. 1994); *Allstate Ins. Co. v. Ellis*, 1987 WL 8309 (Tenn. Ct. App. March 27, 1987); *Glens Falls Ins. Co. v. Happy Day Laundry,* 1989 WL 91082 (Tenn. Ct. App. Aug. 14, 1989).

The record is replete with evidence of Transcontinental's refusal to defend Vulcan. However, a representative of Transcontinental testified at trial that Transcontinental had in fact defended Vulcan and that part of the settlement it paid was on Vulcan's behalf, although it was never communicated to Vulcan or its attorney that a defense was being provided, and Vulcan was not named in the settlement. The Trial Court ruled that Transcontinental had a duty to defend Vulcan, despite Transcontinental's protestations to the contrary, and the Trial Court pointed out the fallacy of Transcontinental's position, by observing that since Transcontinental had conceded its duty to defend Vulcan's vicarious liability due to Thomas' negligence, and since Transcontinental had, in fact, claimed that it did defend Vulcan, Transcontinental would be estopped to then claim it had no duty to defend. In this regard, *see American Home Assurance v. Ozburn-Hessey Storage Co.,* 817 S.W.2d 672 (Tenn. 1991); *Fulton Co. v. Mass. Bonding and Insurance Co.*, 197 S. W. 866 (Tenn. 1917); *Maryland Cas. Co. v. Gordon*, 371 S.W.2d 460 (Tenn. Ct. App. 1963).

Transcontinental's argument regarding estoppel is two-fold. First, it argues that it was improper for the court to rule that Transcontinental was estopped from denying that it had a duty to defend Vulcan, because Vulcan had not pled estoppel as a defense, and because estoppel as a doctrine is generally not favored. Transcontinental had asserted for the first time at trial that it had in fact defended Vulcan regarding its vicarious liability due to Thomas' negligence, and even asserted that its settlement with the Yorks was on Vulcan's behalf. Since this assertion had not been made prior to trial, Vulcan had no reason to plead estoppel. Moreover, the Court's estoppel ruling is supported by case law, and was secondary to its ruling that Vulcan was due a defense under the plain language of the policy and the subcontract agreement. The statement that Transcontinental was estopped to deny that it had a duty to defend was the Trial Court's way of pointing out Transcontinental's inconsistent positions regarding its duty to defend.

Next, Transcontinental asserts that Vulcan was estopped from recovering the costs it incurred in defending the lawsuit, because there was testimony that Vulcan would have hired its own counsel even if Transcontinental had offered to defend. The Trial Court recognized this and consequently awarded Vulcan its defense costs exclusive of attorney's fees, but Transcontinental argues that even with the exclusion of attorney's fees, the award of defense costs was improper because there was potential liability in excess of the policy limits of one million dollars.

The record demonstrates, however, that Vulcan's concern was not for its own negligence, but rather what could be awarded due to Thomas' negligence, which Vulcan would then be held responsible for beyond Transcontinental's policy limits due to the fact that Thomas had no assets. Accordingly, the Trial Court was correct in ruling that Transcontinental should indemnify Vulcan for defense costs which it incurred in defending against the allegations of vicarious liability.

Transcontinental forcefully argues that due to its non-delegable duties regarding this job, Vulcan would have been vicariously liable for Thomas' negligence, and since Thomas was insolvent, Vulcan would have been responsible for satisfying any judgment over the policy limits. Thus the argument goes that Vulcan's settlement with the Yorks served to extinguish its own liability for negligence as well as its vicarious liability for anything in excess of the policy limits, and that this prevents Vulcan from being entitled to indemnification.

The settlement documents do not disclose Vulcan's intent in agreeing to settlement, but Vulcan's attorney who negotiated the settlement testified that he was concerned about Vulcan's excess liability because of Thomas' lack of assets. Moreover, Transcontinental had communicated no offers of settlement, and Vulcan could face excess exposure if the case proceeded to trial and a large verdict was rendered. Afterwards, Transcontinental settled with the Yorks for $725,000.00.

Vulcan relies upon indemnification clauses in the subcontract agreement, as well as the case of *Feld Truck Leasing v. ABC Transnational Transport Co.*, 681 S.W.2d 554 (Tenn. Ct. App. 1984). In that case, this Court was faced with the situation where an indemnitor under a contract failed to obtain the required insurance, and the indemnitee was forced to defend a claim and settle with a third party to avoid liability. *Id.* The indemnitor argued that the indemnitee was not entitled to indemnification for the settlement because the payments were voluntary, and this Court held that, under a contract of indemnity, where the indemnitee makes payments in good faith to a third party, the indemnitee is entitled to restitution from the indemnitor. The Court went on to say that the indemnitor would not be heard to say that the payment was voluntary and not recoverable where the indemnitor had violated its contract to provide insurance. Similarly, in this case, Transcontinental will not now be heard to say that Vulcan's payment was voluntary and non-recoverable when it had violated its duty to defend Vulcan.

Transcontinental relies on *Olin Corp. v. Yeargin, Inc.*, 146 F.3d 398, 404 (6th Cir. 1998). More pertinent on this issue is the case of *Murray Ohio Manufacturing Co. v. Shimano American Corp.*, 946 F.2d 895, 1991 WL 209476 (6th Cir Oct. 17, 1991). The *Murray* case was decided by the Middle District Court of Tennessee, and dealt with an indemnification agreement between Murray, a bicycle manufacturer, and Shimano, a company who manufactured brakes for Murray's bicycles. *Id.* Murray sold the bicycles to Sears, who sold them to the public.

A consumer was injured when the brakes on her bicycle failed, and she sued Sears and Murray, alleging negligent design, assembly, inspection, and distribution of the bicycle brakes. Murray was contractually obligated to indemnify and defend Sears, which it did. Murray asked Shimano to defend pursuant to their indemnity agreement, but Shimano refused and said it had no duty to defend Sears, and thus Murray continued the defense, incurred expenses, and sought reimbursement from Shimano.

The Court held that Murray should be reimbursed by Shimano, based upon the indemnity agreement. Since the indemnity agreement stated that Shimano would indemnify Murray and its customers for loss "of any nature or kind", the Court held Shimano had to reimburse Murray

for the money it paid to settle the case as well as its expenses incurred in defending Sears. The Court also followed the reasoning of *Feld* in holding that an indemnitor must reimburse for payments the indemnitee makes in good faith.

In this case, the subcontract agreement provides that Vulcan shall be indemnified against:

> all losses and all claims, demands, payments, suits, actions, recoveries and judgments, including attorneys' fees, of every nature and description, brought, recovered or arising out of any act or omission of Subcontractor, its agents, subcontractors or employees . . .

The Trial Court's ruling that Vulcan was to be reimbursed by Transcontinental up to the policy limits was appropriate, and we affirm.

Finally, Transcontinental argues that Vulcan is not entitled to prejudgment interest on the award of $275,000.00, because Vulcan did not ask for this award in its pleadings. The issue, however, was raised at trial by Vulcan's attorney in the examination of attorney Hale Hamilton, and Transcontinental had the opportunity to cross-examine Hamilton, as well as file a post-trial brief. Transcontinental's argument that it had no notice of the issue is without merit. Moreover, prejudgment interest does not have to be demanded in the complaint to be awarded. *See Murray Ohio Manufacturing Co.*

Tenn. Code Ann. §47-14-123 provides that:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; . . .

An award of prejudgment interest is not a penalty placed on the defendant, but rather is allowed as an equitable measure. *Otis v. Cambridge Mutual Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992). An award of prejudgment interest "is within the sound discretion of the trial court and the decision will not be disturbed upon appellate review unless the record reveals a manifest and palpable abuse of discretion." *Id*. at 446. We find no abuse of discretion by the Trial Judge in the award of prejudgment interest. We affirm the Trial Judge's Judgment in all respects, and remand with the cost of the appeal assessed to the appellant Transcontinental Insurance Company.

_____
Herschel Pickens Franks, J.

-6-